JOHN W. TREADWELL & another *vs.* SALISBURY MANUFACTURING COMPANY & others.

A trustee holding stock in a manufacturing corporation cannot maintain a bill in equity to obtain the instructions of the court as to what will be his powers and duties in case the corporation shall carry out a contemplated sale of all their property to a new corporation, taking payment in shares of the new corporation, to be distributed among the old stockholders; and to restrain the corporation from making such sale.

The directors of a manufacturing corporation, as the best means of continuing the business, and pursuant to the votes of a majority of the stockholders, though against the protest of a minority, may sell the whole property of the corporation to a new corporation, taking payment in shares of the new corporation, to be distributed among those of the old stockholders who are willing to take them.

BILL IN EQUITY, filed on the 25th of August 1856, by the executors and trustees under the will of Thomas Cordis against the Salisbury Manufacturing Company and their directors.

The bill averred that the testator bequeathed the residue of his property to his executors and the survivor of them, upon trust to invest it in city, or state, or United States stocks, but not in individual securities, authorizing them, however, to permit any investments made by the testator " in manufacturing, insurance or railroad, or other stocks, to remain thus invested, so long as they, or the majority of them, shall deem such investment safe, or for the interest of all concerned ; " and that the testator had made an investment in forty shares of the Salisbury Manufacturing Company, which were now held by the plaintiffs as part of such residue.

The bill then averred that the Salisbury Manufacturing Company were a manufacturing corporation duly established by law, and authorized to manufacture wool, machinery, cotton, linen and iron ; that on the 14th of April 1856, a corporation were chartered by the legislature, for the purpose of manufacturing woollen and cotton goods in Salisbury and Amesbury, by the name of the Salisbury Mills, and were composed mainly, if not entirely, of persons who were at the same time, and still are, officers or stockholders in the Salisbury Manufacturing Company, and had accepted the act and organized under it, and all

of the directors of the first company were stockholders in the second, and all but one directors in the second company.

The bill then averred that at a meeting of the stockholders of the first corporation on the 9th of July 1856, it was voted, by a majority of the votes cast, but against the wishes of a minority, and against the protest of one of the plaintiffs, " that the directors have authority to sell, at public or private sale, all or any part of the real estate, machinery, water privileges, rights, patents, fixtures, tools and property connected with the manufacture of goods, at such times, and on such terms of credit, as they may think will best promote the interests of the stockholders: Provided, however, that in case a sale be made to a new company, provision shall be made that the stockholders in this company, at the time of such sale, shall have a right to take an interest in the new one, in proportion to their respective interests in this ; " and it was further voted, " that, in case of sale, the directors be authorized, as early as may be practicable, to close the affairs of the company, and to take such measures as they may be advised are necessary for that purpose."

The bill then averred that the directors of the first company threatened and intended, without advertising the same for sale, or in any way offering it for sale to others, to sell all their real estate and other property connected with the manufacture of goods to the new corporation for the sum of $250,000 or less, and to take in payment therefor shares in the capital stock of the new company at par, and divide them among the stockholders of the old company, in proportion to the stock held by them in that company, and to close and wind up the affairs of the old company, and surrender and give up their charter and franchise. And the bill averred that said real estate and property were worth, and, if offered to the public for sale, and thrown open to public competition, could be sold, for a much larger sum ; and that said votes of the company were illegal and void.

The bill also averred that the same persons, in making said intended sale as directors of the first company, would be interested, as stockholders or directors of the second company, in the

purchase ; and submitted that such a sale by these directors, acting in a fiduciary capacity as agents and trustees of the stockholders of the first company, to themselves, acting in another fiduciary capacity, as agents and trustees of the second company would be illegal, contrary to the rules of equity, and void.

The plaintiffs then submitted to the court that, if said proposed sale should be deemed by the court to be legal and operative, if made, " it is uncertain and doubtful whether they, acting as aforesaid, as executors and trustees under the said will of Thomas Cordis, can invest any portion of said rest and residue in the stock of said Salisbury Mills ; or whether they can, with safety to themselves, receive and hold shares of the stock of said Salisbury Mills, or of any other corporation, which should be assigned to them, either with or without their request. or consent, or the proceeds of a sale of such stock, in lieu of, or in exchange for, or as a payment or dividend for said forty shares of the stock of said Salisbury Manufacturing Company which they now hold as aforesaid ; and further that, if they cannot or ought not to do so, under the provisions of said will hereinbefore set forth, it is uncertain and doubtful what is their duty in the premises, if the sale, hereinbefore stated to be threatened and intended, should be perfected and carried out in the mode hereinbefore stated ; and they aver that they cannot safely proceed to subscribe for, or take, or hold, or sell said shares of the Salisbury Mills, intended by said directors to be assigned to them, as such executors and trustees ; and that for their protection as executors and trustees, as aforesaid, it is necessary that they should have the aid, direction, advice and protection of this honorable court, sitting as a court of equity."

The prayer of the bill was for an answer, not under oath ; for a determination as to the validity of the votes of the company and the intended sale of property, and as to the powers of the plaintiffs, as executors and trustees, to invest in, receive or dispose of shares in the new company ; for an injunction, and for due process.

The answer admitted all the allegations of the bill, previous to the statements of the intended sale, the truth of which state-

ments the defendants denied, but admitted that a sale of the property of the Salisbury Manufacturing Company was contemplated, and that if such a sale had been advantageously and satisfactorily effected, they had intended to take the necessary legal steps to close and wind up that company, and surrender their charter; denied that said property could, if offered at public sale, or thrown open to public competition, be sold for more than $250,000; denied that the votes of the company were illegal; and averred that it was not determined that the same persons, making the sale as directors, would be interested as stockholders or directors in the purchase by the new corporation, though it was possible that they might.

The answer then alleged that the votes were duly passed after notice to every stockholder, and were legal and valid; that on full inquiry, and a consideration of the various modes of selling and disposing of the property for the best interests of all the stockholders, none appeared or was so discreet and expedient as a sale of the real estate and fixtures to the Salisbury Mills at a price of $250,000, payable in stock of that corporation, and that the directors had therefore opened negotiations for such a sale, but had made no definite or binding offer, and were ready and desirous to sell on the best terms that could be had; that the stockholders and directors, in all their proceedings, had acted with sound discretion, and in good faith towards every stockholder, and for the best interest of all, and that they and the Salisbury Mills were desirous to admit every stockholder in the old corporation to take and hold an interest in the new one, to any extent he pleased, but that was and would be left optional with him; that it had been well understood, ever since February last, by all the stockholders, that the stock in the new corporation would be to a very large extent held by the old stockholders; that by means of the establishment of such new corporation additional capital would be obtained, which could be had in no other way, and that, if such new corporation should be successfully organized, the existing business could be continued without interruption.

The answer denied that the court had jurisdiction of the bill;

denied that the corporation had surrendered their franchise, or offered to do so, or done any act necessarily and certainly tending to or initiatory of a dissolution, surrender or winding up; averred that now and ever after the sale that subject would be retained wholly in the control and at the discretion of the corporation, on a view of the ascertained fitness or unfitness of such a result; that the corporation were solvent, able to pay all their debts and have a surplus, if prudently and discreetly conducted, and if the administration was left in the hands of a majority of the stockholders, acting by directors in whom they and the busi ness community have confidence; but that if the administration was taken from their hands, or subjected to interference or control of others, great inconvenience and sacrifices must result; and that irreparable mischief would be occasioned to all persons interested in the company, by the granting of an injunction.

The defendants then averred that it was not their intention or purpose to hold stock as a corporation in another corporation, but to make a sale of the property for the purpose of paying the debts of the corporation, and ultimately to wind up their affairs, and to distribute the stock obtained among the individual members, if they will accept it, otherwise to reduce it to cash and distribute its value among such members; and that they, as a corporation, did not procure the charter of the new corporation, nor as a corporation do anything in relation thereto.

And they further averred that it was their purpose after such sale, if it should be effected, if it should appear expedient and needful, to apply to the legislature, or to this court, for a dissolution of the corporation, according to law ; and that it was an expedient and just act towards themselves and their creditors that it should be dissolved and wound up, and that the legislature or this court, on petition, might order the same, and this whether any new corporation had been or should be formed or not, and whether the contemplated sale should be consummated or not.

A hearing was had before *Bigelow*, J., who reported the case to the full court. It was agreed that the bill and answer (each of which was under oath) should have the same effect as the

testimony of the same parties would have had if they had been sworn as witnesses.

The plaintiffs put into the case the charter of the defendants and the acts in addition thereto, ( *Sts.* 1822, *c.* 50 ; 1825, *c.* 131 ; 1849, *c.* 248 ; 1854, *c.* 204,) and the *St.* of 1856, *c.* 110, establishing the Salisbury Mills. They also introduced evidence tending to show that the property intended to be sold was of much greater value than $250,000.

The defendants introduced evidence tending to prove that the debts of the corporation were about a million of dollars ; that the corporation had great difficulty in procuring money, and could not go on with their business without raising two or three hundred thousand dollars; that the personal property of the company was nearly enough to pay their debts, and they owned a large amount of real estate and machinery ; that the property had never been appraised, or advertised with a view to sale, and that it would not bring nearly $250,000 if sold by auction; and that the proposed arrangement was the only proper and feasible course for the company to pursue, and if the plan was not perfected, the company must stop business.

*R. Fletcher & J. J. Clarke*, for the plaintiffs, to the point that the plaintiffs might maintain this bill to obtain the advice and direction of the court in the administration of their trust, cited 2 Story on Eq. § 961 ; *Dimmock* v. *Bixby*, 20 Pick. 368 ; *Washburn* v. *Sewall*, 4 Met. 63 ; *Paine* v. *Prentiss*, 5 Met. 396; *Minot* v. *Boston Asylum & Farm School*, 7 Met. 416; *Tucker* v. *Seaman's Aid Society*, 7 Met. 188 ; *Prescott* v. *Prescott*, 7 Met. 141 ; *Treadwell* v. *Cordis*, 5 Gray, 341 ; to the point that the corporation had no right, against the protest of a minority, to sell all the property ; Grant on Corp. 73 ; *Attorney General* v. *Davy*, 2 Atk. 212, and West. temp. Hardw. 121 ; *Ward* v. *Society of Attorneys*, 1 Collyer, 370; to the point that equity would not allow the directors of the Salisbury Manufacturing Company to sell to themselves as directors and stockholders of the Salisbury Mills, Hill on Trustees, 535 ; Story on Agency, §§ 9, 211 ; *Shelton* v. *Homer*, 5 Met. 467 ; *Ball* v. *Carew*, 13 Pick. 31 ; *Robbins* v. *Bates*, 4 Cush. 104 ; *Blood* v. *Hayman*, 13 Met. 231 ;

*Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Mulford* v. *Bowen*, 1 Stockton, 797; and to the point that if a majority had such right at common law, it was taken away by *St.* 1852, *c.* 55; 1 Bishop on Crim. Law, § 87; *Ward* v. *Sea Ins. Co.* 7 Paige, 294.

R. *Choate,* for the defendants.

BIGELOW, J.   The plaintiffs, in order to maintain this bill against the defendants, and bring their case within the limits of our present chancery jurisdiction, seek to establish their right to the aid of the court in their capacity as trustees entitled to protection and advice in the execution of certain trusts with which they are clothed under the provisions of the will set out in the bill.   This is the sole ground on which they rest their claim to equitable relief.   It is true that the frame of the bill seems to comprehend a much broader field of jurisdiction.   It sets forth certain votes and acts of the defendant corporation, which are alleged to be unlawful and beyond the scope of the powers conferred on them by their charter, and seeks to have these votes declared inoperative and void, and the defendants restrained by injunction from carrying them into effect.   But the plaintiffs do not now contend that these allegations, standing alone, would make a case within the reach of the equity powers of the court.

Indeed, it is too well settled to admit of question, that a court of chancery has no peculiar jurisdiction over corporations, to restrain them in the exercise of their powers, or control their action, or prevent them from violating their charter, in cases where there is no fraud or breach of trust alleged as the foundation of the claim for equitable relief.   Their rights and duties are regulated and governed by the common law, which in most cases furnishes ample remedies for any excess or abuse of corporate powers and privileges, which may injuriously affect either public or private rights.   It is only when there is no plain and adequate remedy at law, and a case is presented which entitles a party to equitable relief, under some general head of chancery jurisdiction, that a bill in equity can be maintained against a corporation.   And this rule is applicable to stockholders as well as to other persons.   Angell & Ames on Corp. § 312.   Grant on Corp. 71, 271.   *Morley* v. *Alston,* 1 Phil. Ch. 790.   *Attorney General*

v. *Utica Ins. Co.* 2 Johns. Ch. 371. *Verplanck* v. *Mercantile Ins. Co.* 1 Edw. Ch. 84. *Attorney General* v. *Bank of Niagara,* Hopk. 354. *Hodges* v. *New England Screw Co.* 1 R. I. 350.

Looking then at the case presented by the bill as one in which relief is sought solely on the ground that the plaintiffs are trustees, and entitled to the advice and aid of the court in the execution of the trusts with which they are charged, the question is whether, on the facts stated and proved in the case, they show any title to a decree in equity against the defendants. There can be no doubt of the general power and authority of a court of chancery to entertain jurisdiction of cases in which trustees ask for protection in the performance of their duties. This court has often exercised such jurisdiction. But the cases which fall under this head of equity are those in which there are conflicting claims to the trust estate, or it is doubtful, upon the construction of the will, deed or other instrument creating the trust, to whom the property or the beneficial interest in it belongs. A trustee in such cases, by filing a bill in the nature of a bill of interpleader, to which he makes parties those who have, or claim to have, an interest in the trust estate, can ask the directions of the court as to the proper mode of administering the trust, and be protected by its decree in the disposal of the property in his hands. But the allegations in the present bill present no such case. The defendants are neither the owners nor claimants of any property in the hands of the complainants. The *cestuis que trust,* those who have an interest in the trust estate created by the will, are not even made parties to the bill. There are no adverse claimants of the trust estate or its income; nor is there any doubt or dispute concerning the interpretation of the will, under which the plaintiffs hold their title as trustees. The only allegation in the bill which in any way connects the defendants with the plaintiffs is that a portion of the trust estate is invested in certain shares of the corporation.

If, then, the bill can be maintained at all against these defendants, it must rest on the single ground that trustees, who are stockholders in a corporation, can resort to the equity side of the court under a claim for protection and advice in the exe

cution of their trusts, and thereby subject the corporation and all their acts and proceedings to the jurisdiction of a court of chancery. But the objections to sustaining the bill in this aspect of the case are obvious and decisive. In the first place, it is clear that these defendants cannot be reached by any decree which the court can properly render on the case stated in the bill. The right of the plaintiffs to aid and advice from the court in the discharge of their duties as trustees is not in any degree dependent on the acts and proceedings of the defendants. It is not necessary in order to enable the court to give such aid and advice, that the defendants should be made parties, or that any decree should be entered against them. A court of equity, in the exercise of its legitimate jurisdiction, will inquire into and decide upon all questions of law and fact upon which the right of a party to equitable relief depends. It will take cognizance of collateral and incidental matters, although of themselves they may not be the subject of a direct suit in equity, if they arise in the exercise of an acknowledged chancery jurisdiction, and the decision of the cause renders it necessary that they should be considered and determined. But they must be essential to the principal inquiry and to the relief sought by the bill; otherwise they are irrelevant and immaterial, and cannot be properly inquired into, much less form the basis of a decree. Assuming that the plaintiffs state a case entitling them to the aid and advice of the court in the performance of their duties as trustees, a suitable decree may be entered to meet fully this part of the prayer of the bill, without any inquiry concerning the legality of the proceedings of the corporation. Whether the acts of the defendants alleged in the bill are legal or illegal, they can in no degree affect the right of the plaintiffs to seek the advice and direction of the court in the performance of their duties as trustees. Nor can the plaintiffs make use of a bill, the main purpose of which is alleged to be to obtain such advice and direction, to bring into adjudication collateral and irrelevant questions, and thereby procure a decree against parties who have no rights or interests involved in the principal subject matter which forms the basis of the plaintiff's case.

34 *

The plaintiffs seem to have proceeded on the ground that it was sufficient, in a bill framed for the purpose of obtaining protection and aid in the execution of their trust, to allege that certain acts of the defendants might injuriously affect the value of the shares in the corporation held by them in trust, in order to bring their case within the cognizance of the court and subject the corporation and its proceedings to jurisdiction in equity. But if this were so, it would follow that the rights and remedies of stockholders against corporations would be made to depend on the capacity in which they owned shares in the corporate stock. One who held them as trustee would be entitled to a remedy, which would be denied to another who owned them in his own right. A corporation might be perpetually enjoined from doing certain acts, if any part of their stock, however small, happened to be held in trust, which, otherwise they could do without restraint. It is clear that no such distinction between different classes of stockholders can exist. They all stand on a perfect equality as to rights and remedies. Jurisdiction in equity over a corporation must be determined not by the capacity in which the plaintiff seeks relief, but by the case which is stated in his bill against the defendant.

Besides, if the doctrine on which this bill can alone be maintained is sound, we do not see where it is to stop. If it is true that this suit will lie against a corporation solely on the ground that their acts tend to the injury of a portion of the trust estate, and to diminish its value, we can see no reason why a like remedy might not be enforced against an individual. The result would be to sweep within the reach of equity jurisdiction almost every right or claim which a trustee might have occasion to enforce in behalf of the trust estate. By filing his bill, asking the aid and advice of the court as trustee, and setting forth any acts of a defendant, which tended to injure or impair the value of the trust estate, he would state a case quite as much within the reach of equitable relief as the one now before us. Take an illustration. A trustee holds a promissory note belonging to the trust estate. He files his bill, alleging that he holds as trustee a note against the defendant; that when it is paid, it will be neces-

sary for him to invest the amount according to the provisions of the will creating the trust; that he requires the aid and advice of the court in regard to the mode and kind of investment; that the defendant is about to dispose of property in a manner which the plaintiff deems improvident and unsafe; that the defendant is engaged in transactions which are unlawful, and which tend to impair his estate, and render him unable to pay the note when it shall fall due, and that thereby the value and amount of the trust estate will be diminished. Upon a case thus stated, it would hardly be contended that an injunction could issue to restrain the defendant from disposing of his property or engaging in unlawful transactions. And yet the case does not differ essentially from that stated in the plaintiffs' bill.

Another consideration is decisive on this question of jurisdiction. If the plaintiffs can sustain their case, so that the votes and proceedings of the corporation and its directors can be declared inoperative and void, and an injunction be granted to restrain the defendants from carrying them into effect, no aid or direction will be required by the trustees in the execution of their trusts. It is only in the event that the property of the corporation is sold and exchanged for stock in the proposed new corporation in pursuance of the votes set out in the bill, that any advice or protection is asked for by the plaintiffs. The chief object of the bill is therefore to enjoin the defendants. The aid and advice for which the plaintiffs ask is sought only as secondary to this main purpose, and as contingent upon a refusal to grant the principal relief prayed for. As a bill seeking a decree against the defendants, it cannot be maintained, for the reasons already given. As a bill in the nature of a bill of interpleader to obtain the direction of the court in the administration of a trust, it must fail, because the exigency has not yet arisen, and may not occur, to render any aid or advice necessary. A trustee cannot maintain such a bill *quia timet*, nor without joining as parties the *cestuis que trust* who have a direct interest in the subject matter of the bill.

There is no aspect of the case, therefore, in which the title of the plaintiffs to equitable relief can be supported. It might have

been otherwise, if any fraud or breach of trust had been alleged in the bill. But the case shows that the defendants, who are directors of the corporation, have acted honestly, with entire good faith, and with a single purpose to carry out the will of a majority of the stockholders.

The views which we have taken dispose of the whole case. It is therefore unnecessary to go at large into a consideration of the other branch of the cause, which was fully and elaborately discussed at the bar. But we entertain no doubt of the right of a corporation, established solely for trading and manufacturing purposes, by a vote of the majority of their stockholders, to wind up their affairs and close their business, if in the exercise of a sound discretion they deem it expedient so to do. At common law, the right of corporations, acting by a majority of their stock-holders, to sell their property is absolute, and is not limited as to objects, circumstances or quantity. Angell & Ames on Corp. § 127 *& seq.* 2 Kent Com. (6th ed.) 280. *Mayor &c. of Colchester* v. *Lowton,* 1 Ves. & B. 226, 240, 244. *Binney's case,* 2 Bland, 142. To this general rule there are many exceptions, arising from the nature of particular corporations, the purposes for which they were created, and the duties and liabilities imposed on them by their charters. Corporations established for objects *quasi* public, such as railway, canal and turnpike corporations, to which the right of eminent domain and other large privileges are granted in order to enable them to accommodate the public, may fall within the exception; as also charitable and religious bodies, in the administration of whose affairs the community or some portion of it has an interest to see that their corporate duties are properly discharged. Such corporations may perhaps be restrained from alienating their property, and compelled to appropriate it to specific uses, by mandamus or other proper process. But it is not so with corporations of a private character, established solely for trading and manufacturing purposes. Neither the public nor the legislature have any direct interest in their business or its management. These are committed solely to the stockholders, who have a pecuniary stake in the proper conduct of their affairs. By accepting a charter, they do not under-

take to carry on the business for which they are incorporated, indefinitely, and without any regard to the condition of their corporate property. Public policy does not require them to go on at a loss. On the contrary, it would seem very clearly for the public welfare, as well as for the interest of the stockholders, that they should cease to transact business as soon as, in the exercise of a sound judgment, it is found that it cannot be prudently continued.

If this be not so, we do not see that any limit could be put to the business of a trading corporation, short of the entire loss or destruction of the corporate property. The stockholders could be compelled to carry it on until it came to actual insolvency Such a doctrine is without any support in reason or authority The case of *Ward* v. *Society of Attorneys*, 1 Collyer, 370, cited by the plaintiffs, does not support it. They were not a trading corporation; nor were their affairs in an embarrassed condition. It was the case of the majority of a corporation, attempting to surrender the old charter, and to pervert the corporate funds to a different purpose, by passing them over to a new association. Besides, the questions raised in the case were not finally determined by the vice chancellor. They were only considered so far as it was necessary to decide the question of granting an injunction preliminary to the hearing.

Upon the facts found in the case before us, we see no reason to doubt that the vote of the majority of the stockholders, for the sale of the corporate property, and the closing of the business of the corporation, was justified by the condition of their affairs. Without available capital, and without the means of procuring it, the further prosecution of their business would be unprofitable, if not impracticable. Under these circumstances it was in furtherance of the purposes of the corporation, to pay their debts, close their affairs and settle with their stockholders on terms most advantageous to them. *Sargent* v. *Webster*, 13 Met. 504.

Nor can we see anything in the proposed sale to a new corporation, and the receipt of their stock in payment, which makes the transaction illegal. It is not a sale by a trustee to himself,

for his own benefit; but it is a sale to another corporation for the benefit and with the consent of the *cestuis que trust,* the old stockholders. The new stock is taken in lieu of money, to be distributed among those stockholders who are willing to receive it, or to be converted into money by those who do not desire to retain it. Being done fairly and not collusively, as a mode of payment for the property of the corporation, that transaction is not open to valid objection by a minority of the stockholders. *Hodges* v. *New England Screw Co.* 1 R. I. 347.

It was urged by the plaintiffs that the common law right of a corporation to sell their property and close their business, had been taken away by *St.* 1852, *c.* 55. But we do not think that such is its true interpretation. It is not restrictive in its terms, but only permissive. It was intended to provide a mode in which the charter of a corporation might be dissolved without a resort to the legislature. But it did not take away the right of a corporation to proceed in the sale of their property preparatory to a surrender of their charter, which is all that the defendants undertook to do.           *Bill dismissed.*