EDGAR O. DURFEE, PROBATE JUDGE v. WILLIAM W. ABBOTT
ET AL.

*Liability of executor on bond as residuary legatee to pay debts and legacies—Consent of attorney—Production of record proof—Notice of proceedings to settle claims against estates.*

Where an executor who is also residuary legatee has given bond to pay the debts and legacies of the testator, he becomes entitled to take, possess and dispose of all the property of the estate at his discretion, and without returning into court any inventory or account whatever; the debts and legacies become personal liabilities against him which he and his sureties must pay and discharge even though they exceed the assets.

A probate order, providing for the adjustment, by the court, of a claim against a decedent, contained the recital "the attorney for the executor of the last will and testament of said deceased being present in court and consenting thereto." *Held*, insufficient in itself, and without at least identifying the attorney, to give the court jurisdiction.

An attorney under mere general retainer cannot bind his client to any particular action by giving an unauthorized consent thereto; and a layman, acting as attorney, cannot give consent at all to any action binding his principal, unless he is specifically and formally empowered for the very purpose, and his authority is produced and proved in court.

Consent to an order of court takes the place of process to bring the party consenting within the jurisdiction; and the record should name the person assuming therein to act for the party, so that the latter may know to whom to look for indemnity in case the appearance in his behalf was unauthorized.

An attorney who relies upon record proof to support an assertion must produce the particular record ; it is not enough that he merely produces the file in which he claims it is to be found.

An executor under ordinary bonds must defend the estate against claims and can pay none that have not been judicially approved ; he cannot dispense with proof, or bind himself or the estate by admissions. But an executor who has given bond as residuary legatee can settle claims at his discretion ; no one can question his acts but his sureties, nor can they, except when it is sought to charge them personally on his default in making payment.

Giving bond as executor and residuary legatee substantially completes administration; and the intervention of the Judge of Probate afterwards, if admissible at all, is never essential unless, perhaps, where the executor disputes a claim.

Where an executor, as residuary legatee, has given bond to pay the debts and legacies, no commission need be issued to consider claims against the estate.

Notice by publication is insufficient in any except the ordinary proceedings to adjust claims against an estate ; if such adjustment is attempted by the probate court after the executor has given bond as residuary legatee, the notice which, in such cases, is to the executor and his sureties, must be personally served.

Settlement of estates is in ordinary cases a proceeding in rem to which in contemplation of law all persons interested are parties ; the estate is the res, and as the successive steps are taken in a limited time, and are presumed to be watched by the parties concerned, notice to them by publication is sufficient.  But when the executor, as residuary legatee, has given bond to pay debts and legacies, the proceeding is no longer in rem for the res disappears.  When the estate passes from the control of the probate court, a claim then attaches to no specific property, but becomes the personal obligation of the debtor and his sureties alone, and notice of proceedings to enforce it must be served on them personally and on no others, as heirs, beneficiaries and creditors have no interest in it and no right to be heard.

Constructive notice of proceedings to enforce personal demands is insufficient.

Error to Wayne.   (Jennison, J.)   April 5.—April 11.

DEBT on bond of residuary legatee.   Defendants appeal. Reversed.

*Alexander D. Fowler* for appellants.

*Conely, Maybury & Lucking* for appellee.

COOLEY, J.   The defendants who prosecute this writ of error are the sureties on the bond of John McKeown, executor and residuary legatee under the will of John T. McKeown, deceased.   The bond was given under the statute (Comp. L. § 4366) and its condition is that the principal obligor shall pay the debts and legacies of the testator.   On the giving of this bond the executor became entitled to all the property of the estate, and was at liberty to take, possess and dispose of it at discretion, without returning into court any inventory or account whatsoever.   *McElroy v. Hatheway* 44 Mich. 399 ; *Batchelder v. Russell* 10 N. H. 39 ; *Colwell v. Alger* 5 Gray 67.   By the same act the testator's debt and legacies were made personal liabilities of the executor, which he and his sureties must pay and discharge, even though they might exceed the assets.   *Hatheway v. Weeks* 34 Mich. 237 ; *Chapman v. Craig* 37 Mich. 370 ; *McElroy v. Hatheway* 44 Mich. 399 : *Tarbell v. Whiting* 5 N. H. 63 ; *Colwell v. Alger* 5 Gray 67 ; *National Bank v. Stanton* 116 Mass. 435.

This suit is brought upon the bond, against the principal and sureties, to recover the amount of an alleged indebtedness of the testator to one Culver.   The sole evidence of indebtedness to Culver, which was produced on the trial, consisted in an order of the judge of probate, purporting to be an allowance of Culver's claim at a sum specified.   The proceedings in the probate court resulting in this allowance are very imperfectly reported to us, but the following facts are either stated, or are inferable from the recitals in the probate records.

After the executor had duly qualified, a commission for the hearing and allowance of claims was issued, and in due time was returned.   Culver, who for some reason had not presented his claim to the commissioners, applied to the court, after the commission had been returned, for an order reviving it.   On August 6, 1878, the following order was entered by the probate court :

" In the matter of the estate of John T. McKeown,

deceased. This day having been appointed for hearing the petition of Edmund F. Culver, praying for the revival of the commission to the commissioners on claims against said deceased, or for the allowance of his claim by the court, and the attorney for the executor of the last will and testament of said deceased being present in court and consenting thereto, it is ordered that the claim of said petition be examined and adjusted by the court, at the probate office in the city of Detroit, on the fifth day of September next, at ten o'clock in the forenoon, and that notice of said hearing be given by publishing the same once a week, for three successive weeks previous to said day of hearing, in the Detroit *Post and Tribune*, a newspaper printed in said county of Wayne."

It will be noticed that this order purports 'to be made by consent of the "attorney for the executor," and it is supposed to bind the executor to the proposed hearing. Preceding steps were not proved, and the executor therefore appears in court on the making of this order by the force of this consent alone. The recital in the order attracts attention by the fact that the person giving the consent is not named. Who was this attorney, and what was his authority? Was he employed generally to take charge of all matters pertaining to the estate, or was he specially employed in the particular proceeding? Was he an attorney at law, or was he a layman specifically empowered to answer this claimant's petition? These are questions which the probate records ought to answer, but upon which these records are silent. The jurisdiction of a court over the person of a litigant cannot be left to rest upon so vague and ambiguous a recital as appears here. No attorney, by virtue merely of a general retainer, can have authority to bind his client to any particular action by such a consent; and no person, not a member of the legal profession, could give the consent at all, unless specifically and formally empowered for the very purpose, and the authority produced and proved in court. And in any case the record should identify and name the person assuming and acting upon the authority, for the very sufficient reason—if for no other—that some particular person should appear of record to be responsible for the

act, in order that the executor may know to whom he should look for indemnity in case any one has assumed to enter an unauthorized appearance for him. Consent to an order, in such a case, stands in the place of process to bring the party before the court, and the same reasons which require that an officer shall return process over his own signature, make it imperative that some named person shall stand responsible for the supposed consent.

It is not possible, therefore, to derive any support for the subsequent proceedings from the recital of consent which is contained in this order. Still, as the order for publication was general, and in terms as much applicable to the executor as to the sureties, compliance with it would doubtless be sufficient to bring the executor before the court if it was sufficient as to the sureties; and we may therefore leave out of view the supposed consent, and proceed to inquire whether the order for publication was of force for any purpose. This is the most important question in the case.

Here, however, we are confronted with the difficulty that it does not appear that the publication was ever made. It appears that counsel for the plaintiff claimed on the trial that the order was published, and proof thereof duly filed in the probate court; and as evidence of this he brought into the court the probate files and submitted them in gross, claiming that the evidence was there. This was not admitted by the defendants, and the plaintiff went no farther in making the proof. It seems to have been assumed that it was the business of the defendants, after the assertion was made that the proof was in the files, to search the package through and prove the negative if he did not find it; and that counsel's assertion was prima facie correct until it had been disproved. This is a mistake. The party asserting a fact must prove it; and if it is a fact supposed to be of record, he must produce the record on which he relies, and submit it to inspection. As well might he produce a record of deeds and require that his assertion that a particular conveyance appearing in it should be received as sufficient evidence of the fact until disproved, as to make a similar

assertion respecting the mass of papers constituting the probate files. The other party is not to be called upon to prove a negative by any such device. It would be going but a step farther for a party to call a witness, and on an assertion that he would testify to certain facts, insist that they were therefore proved, until the other party, by interrogating him, disproved the assertion.

But supposing the publication proved, let us see how the case will stand. The plaintiff, to maintain his judgment, must establish the following propositions: *First,* that claims must be proved and allowed where the executor, as residuary legatee, has given bonds to pay debts and legacies, or at least that they may be, as in other cases; and *second,* that when the judge of probate proposes himself to hear and pass upon claims, notice by publication is an admissible process for bringing the parties concerned before him. If he fails in supporting either of these propositions, he fails altogether.

That in respect to the proof of claims there are essential differences between this case and the ordinary case of administration, is obvious on the most cursory examination of the statutes. An executor who gives the customary bond has no authority whatever to dispense with the proof of claims, or to make any admissions respecting them which can bind either himself or the estate. *Fish v. Morse* 8 Mich. 34. His duty is to defend the estate against claims; not to allow them; and he can pay only such as are judicially approved. The necessity for the allowance of claims is therefore imperative and absolute. But the executor, who is residuary legatee and has given bond as such, may settle and pay the claims at discretion, and nobody except the sureties in his bond can question his acts, for the very obvious reason that no one else is concerned. Even the sureties could question them only in case attempt was made to charge them personally upon his default in making payment. The giving of such a bond substantially completes the administration; and if the further intervention of the judge of probate is admissible for the adjustment of claims,

it is certainly not essential unless it may be when a claim is asserted which the executor disputes. The settlement of claims is the personal affair of the executor and the claimants, to be disposed of in their own way and at their own pleasure.

That it has been customary to issue a commission in these cases is probable, but in *Alger v. Colwell* 2 Gray 404, under statutes analogous to our own, it was deemed quite unnecessary. In that case, as in this, the executor had given bond as residuary legatee. Afterwards, having discovered that the liabilities exceeded the assets, he petitioned to have his bond canceled and the ordinary executor's bond substituted, and also that a commission be issued for the hearing and adjustment of claims. The first prayer was denied on the same grounds which influenced this Court to the judgment in *Hatheway v. Weeks* 34 Mich. 237; and the second was denied also. The Supreme Court, approving of the action of the probate judge in denying the first prayer, added that as the bond "stands as security to creditors for the payment of their debts in full, there was no occasion to appoint commissioners to receive and examine their claims; and he was, therefore, correct also in refusing to appoint them."

But let it be admitted that by reason of failure of the executor and the claimant to agree it was proper to bring the claim before the judge of probate for allowance, and we have still to see whether publication of notice is an admissible method for bringing the parties before him. That it is not the most proper method is very obvious, for the very sufficient reason that the only persons to be notified are the executor and his sureties; and a personal notice to them is more simple, more certain to accomplish its purpose, and must generally be more inexpensive. The judge of probate should, therefore, have ordered personal notice to be given, even if publication would answer the requirements of the law. But in our opinion it would not answer the requirements of the law in a case of this description, and any general words in the statutes, which would seem to

admit of such a notice, must be restricted in their operation to estates which are being settled in the ordinary way.[1]

Notice by publication in probate cases is generally admissible, because the settlement of an estate is a proceeding in rem, to which all persons interested are, in contemplation of law, parties; the estate is the res, and the successive steps are required to be taken in a limited time, and are supposed to be watched by the parties concerned for the protection of their respective interests. In such a case notice by publication is reasonably certain to reach the parties; and it may, therefore, be quite proper to provide for that species of notice, and to make it sufficient for jurisdictional purposes. In many cases any other notice would be impracticable, because of the great number of the parties in interest, and the difficulty of finding and reaching them for personal service. Every heir and every beneficiary under a will may be interested in disputing an alleged indebtedness, and every creditor also, wherever there is danger that the allowance of further claims will preclude payment in full. But the case is wholly different when an executor who is also residuary legatee has given bond to pay all claims. There is no longer a proceeding in rem, for the res disappears when the estate passes from the control of the probate court and becomes merged in the individual estate of the executor himself. What before was a jus ad rem in the creditor, to be enforced by the aid of the probate court as a lien upon an estate in its charge, becomes now a personal obligation of the executor and his sureties, attaching itself to no specific property, and concerning no other persons whomsoever. The court has no power, for the purpose of enforcing this obligation, to follow the property which before constituted the assets of the testator; and the heirs, the beneficiaries under the will, or the creditors, are not to be summoned when the demand is to be proved, because they have no interest in the question of its proof, and therefore no right to be heard upon it.

It seems plain, then, that the right to establish the claim in controversy on merely constructive notice to the parties

concerned cannot be admitted on any assumption that the proceeding is a proceeding in rem. The res having disappeared, and the demand having become the personal obligation of the executor and his sureties, they are entitled to have it treated as a personal obligation in the proceedings to prove it. They are entitled to their day in court, and to personal service of process, or a substitute therefor, to bring them before the court. Merely constructive notice which may never reach them, and which would be insufficient in the case of other personal demands, will be insufficient in this case also.

It follows that the supposed allowance of the claim by the judge of probate was ineffectual and the judgment based upon it is erroneous. It will be reversed, with costs, and a new trial ordered.

The other Justices concurred.