## PIERCE BUTLER AND OTHERS v. WALTER BUTLER AND OTHERS.[1]

April 17, 1930.

No. 27,552.

[1]Reported in 230 N. W. 575.

*Oscar Hallam* and *Norbert Willwerscheid,* for appellant.

*M. J. Doherty, Wilfrid E. Rumble* and *Charles Bunn,* for plaintiff-respondents.

*Patrick J. Ryan,* for estate of Margaret Butler and all defendants except Walter Butler, his children and grandchildren.

STONE, J.

Plaintiffs, as trustees under the will of John Butler, deceased, on a complaint in the nature of a bill for instructions, in this action seek court approval of the contract with Margaret Butler, widow of John Butler, dealt with in the opinion. Walter Butler, a brother of the deceased, and a beneficiary of the trust, interposed an answer objecting to the contract. The trial resulted in findings and decision that plaintiffs had authority to make the contract and were entitled to judgment approving its "execution and perform-

ance." Defendant Walter Butler appeals from the order denying his motion for a new trial. Most of the other defendants, all the beneficiaries of the trust who are of legal age, join plaintiffs in seeking approval of the contract.

John Butler departed this life September 22, 1926, leaving estate of upwards of $2,730,000. Surviving him were his widow, Margaret Butler, a daughter, Margaret Clark, two sisters, four brothers and seventeen nieces and nephews. The will was executed August 3, 1923. Honorable Pierce Butler, a brother of the deceased, his three sons, Pierce, Jr., Francis D. and Patrick, were made trustees of the residue of the estate and in that capacity are now plaintiffs in the instant action.

Article I of the will left to the widow specified personal property worth $1,000, $10,000 in cash, and provided for a monthly payment to her of $2,000 for life.

Article II directed that $250,000 be placed in trust for the benefit of children of Marie Quinn Geisenhoff, a deceased niece of the testator's wife. This trust was to endure for not longer than one year after the death of the last survivor of the beneficiaries. Upon its termination the principal was to revert to the residue of the estate. It would fail if the widow renounced the will.

Article III is a legacy to his brother Pierce of all the testator's stock in certain so-called "close corporations," Butler Brothers, Farm Mortgage Bond Company, Quinn Mining Company, and Builders Trust Company, and provided that if Pierce Butler should not survive the testator these stocks should go to his heirs at law. The value of the stocks so bequeathed was estimated by the trustees as $782,673. The appraisers valued them at $327,919.86.

Article IV directed the payment of debts, all inheritance and other taxes, charges and expenses of every kind out of the estate and then bequeathed to plaintiffs as trustees the residue, in trust for the following purposes:

If the widow should survive the testator and accept the provisions of the will for her in lieu of her statutory and other rights to pay her the annual income for life of $24,000 given by Article I.

To pay to each of the six surviving sisters and brothers one-sixth of the annual income remaining, or, in the event of the widow's death, to pay each of them one-sixth of the entire annual income.

After the death of the widow and upon that of each sister or brother, one-sixth of the original residue to go, per capita, to the nieces and nephews of the testator then living and to the surviving child or children of any deceased by right of representation.

The trust was to continue for 18 years after the death of the last survivor of the sisters and brothers, and thereupon the residue remaining was to go to nieces and nephews "share and share alike" or to the surviving child or children of any deceased by right of representation.

Special provision was made for the creation and administration of the trust estate in the event that the widow should renounce the will or should not survive her husband. The trustees were given the usual general power of management, of investment and reinvestment, and "whenever they shall determine it to be for the best interests of the trust estate" to sell any or all of the property therein for such prices and upon such terms as they shall determine.

The will was admitted to probate October 26, 1926. By statute, G. S. 1923 (2 Mason, 1927) § 8722, John Butler being a deceased parent, the widow had six months from that date within which to file with the probate court her election on the one hand to take under the will, or on the other to renounce its provisions for her benefit and to take under the statute of descent. In the latter event she would have taken, roughly speaking, one-third of the whole, or in excess of $900,000. She was then suffering from the illness, to be referred to later, which speedily proved fatal. The will (we assume for present purposes) intentionally made no provision for the daughter, Margaret Clark. It was the desire apparently of the mother that she should be provided for and also that some others should ultimately be benefited in a manner and to an extent not effected by the will. For that purpose, December 6, 1926, she made with the trustees the contract of which they now seek approval. The executors are not parties to it.

It recited that Margaret Butler desired to accept the provisions of the will in lieu of her statutory rights upon the assumption by the trustees of the obligations imposed upon them by the contract (if valid) and that she did not in any way desire to take one-third of the stocks specifically bequeathed to Pierce Butler, but that she would elect to take her statutory rights were the contract not made. With the contract was filed what, by itself, was an unconditional acceptance of the will. In consideration, the contract proceeds, of that election the trustees assigned their right to receive $500,000 of the estate upon stated conditions and to named persons. Margaret Butler herself was to take $155,000. Of this, it appears from the record although not from the contract, she intended $100,000 to be used for the purchase of an annuity payable to her daughter, Margaret Clark, for her life and then to the latter's daughter (granddaughter of John and Margaret Butler) for her life. Another $50,000 was assigned in trust for the benefit of Kate McGrann (sister of Margaret Butler) with a provision for the reversion of the principal to plaintiffs' trust after Kate McGrann's death. To each of four named persons was assigned $10,000. All were relatives but some strangers to John Butler's will. One was Belle Pennington, one of his sisters. To Irene Pennington was assigned $5,000. The total value thus assigned was $250,000. A like sum was assigned, but in trust, to take the place of the Geisenhoff trust should it for any reason not be established under the will. For that trust, whether referable to will or contract, $250,000 was necessary. So the contract's assignment for that purpose should not be included in determining the net effect if the contract is approved and performed. But the Geisenhoff trust was so conditioned by the will that if the widow had renounced, the trust would have failed and so $250,000 saved to the estate. Hence, if the contract had not been made and in consequence the widow had renounced the will, $500,000 would have been saved. On the other hand the widow's one-third of over $900,000 would have been lost. (The income for the widow provided by the will, which would have been saved to the estate had she renounced, will be referred to later.)

The contract further provided that the provisions of the will for the personal benefit of the widow should remain unimpaired. A closing stipulation was that "should this agreement be held not binding upon the trustees as ultimately determined by the proper courts or inoperative to any substantial extent, then Margaret Butler renounces the provisions made for her benefit in said will and elects to take her statutory rights."

Plaintiffs are here seeking the approval of a contract made by them as trustees to which the executors as such are not parties. The will of John Butler cannot be changed by the contract of his trustees or anybody else. But parties otherwise competent may contract in respect to and assign or otherwise qualify the rights which accrued to them under the will upon the death of John Butler. Rogers v. Benz, 136 Minn. 83, 161 N. W. 395, 1056. Inasmuch as plaintiffs sue as trustees, the jurisdiction of the district court is beyond question. Mayall v. Mayall, 63 Minn. 511, 65 N. W. 942; Congdon v. Congdon, 160. Minn. 343, 200 N. W. 76.

The real question is not of jurisdiction but of the right of plaintiffs to sue. The argument is that, if otherwise unobjectionable, their action in making the contract was premature; that they had received nothing under the will and so were not in possession or control of any trust property in respect to which they had the right to contract. While there is no doubt of the general power of the district court as one of equity to take jurisdiction of cases in which trustees ask for protection and guidance in the performance of their duties, yet it is said, "one of the principal requisites for the maintenance of a bill for instructions is the fiduciary possession of a fund of which some disposition is required to be made presently"; and while a trustee has the right to ask the instruction of the court as to his present duties, he cannot request instructions as to what may be his duty upon the happening of future contingencies. Bullard v. Chandler, 149 Mass. 532, 538, 21 N. E. 951, 952, 5 L. R. A. 104.

The absence of proof of formal or express acceptance by plaintiffs of their trust is no obstacle to the action. Their negotiation ·of the

contract is sufficient evidence of acceptance. Neither is the fact that they had not taken physical possession or actual control of the trust estate alone sufficient to deprive them of the right to make the contract and seek its approval. An ordinary devisee or legatee, before he comes into possession or control of the subject matter of the gift, may sell or otherwise contract with respect to it and take any action necessary to conserve his rights. Within their powers otherwise, legatees or devisees who take in trust must have the same right.

Upon the decease of John Butler, plaintiffs as trustees had as to the residue left to them in trust a vested legal right. Only its possession and enjoyment were postponed pending the proceedings in the probate court for the distribution of the estate under the will. Accepting the trust, it would be difficult for them to excuse themselves if, before coming into actual possession and control, they had declined on that ground alone the acceptance of an unequivocal offer for the benefit of the trust estate. Their action was not premature, and they have the right to prosecute this action for its approval. They are not "intermeddling" with the administration of the estate in the probate court or the functions of the executors within the rule of Roach's Estate, 50 Or. 179, 92 P. 118.

■ It is argued for appellant that the widow could not condition her election upon the validity of the contract, a proposition supported by Stearns v. Bemis, 185 Mass. 196, 70 N. E. 44. If that is the law, a renunciation conditioned upon the contract's being held invalid, and so intended to be an acceptance if it should be held good, is equally impossible. Assuming, without deciding, that Mrs. Butler's conditional acceptance and conditional renunciation were both void, there was then no express election one way or the other. She nevertheless accepted because she did not renounce within the statutory period. Either way the question of conditional election should be decided, Margaret Butler made under the statute an unconditional election to accept her husband's will. She did so in reliance upon and performance of her contract with plaintiffs, the one purpose of which on their part was to procure that election.

Aside from the necessity for its exercise within the statutory six months, the right to elect was personal to and died with Margaret Butler. Dunnell, Minn. Pr. Law, § 503. No court now would have power to undo the election and substitute for it a renunciation. Estate of Nordquist v. Sahlbom, 114 Minn. 329, 131 N. W. 323. To disapprove of it, to deny now the power of the trustees to make it, would give their trust all the benefit of the contract but deprive Margaret Butler's estate of the advantages she bargained for—which she at least had a right to bargain for and to get which she not only promised but has irretrievably given a consideration more than adequate.

■ In holding that in any view of the case the widow elected to take under the will, we decide an issue which usually is for original decision exclusively by the probate court. That is because ordinarily the question arises first in the administration of an estate. Here it just so happens that the question comes to us without having been first passed upon by the probate court. And it comes unencumbered by any issue of fact. Having jurisdiction of the action, we not only have the right but also are under the duty to decide every issue of law the decision of which is necessary to judgment. We are not prevented simply because usually the issue arises in such fashion that another court has exclusive original jurisdiction of it. That is because "a court of equity, in the exercise of its legitimate jurisdiction, will inquire into and decide upon all questions of law * * * upon which the right of a party to equitable relief depends. It will take cognizance of collateral and incidental matters, although of themselves they may not be the subject of a direct suit in equity, if they arise in the exercise of an acknowledged chancery jurisdiction, and the decision of the cause renders it necessary that they should be considered and determined." Treadwell v. Salisbury Mfg. Co. 73 Mass. 393, 401, 66 Am. D. 490. See also Redner v. New York F. Ins. Co. 92 Minn. 306, 99 N. W. 886; McKusick v. Seymour, Sabin & Co. 48 Minn. 158, 170, 50 N. W. 1114; Davis v. Forrestal, 124 Minn. 10, 144 N. W. 423, L. R. A. 1915F, 1012, Ann. Cas. 1915B, 448. To

pass upon the question of election to the extent we have has been necessary for the simple reason that we must determine whether the contract was properly approved below. That task could not well be performed without first determining, at least in general scope, the effect of the contract upon its principal subject matter. We must consider the contract to the extent necessary to determine its validity, as was done in Rogers v. Benz, 136 Minn. 83, 161 N. W. 395, 1056.

■ The issue whether the contract will be beneficial to the trust was found for plaintiffs below. There is no question about it unless the fact that Margaret Butler, when the contract was made, was suffering from an incurable and speedily fatal malady should be ignored and her expectancy taken at the normal figure of one of her then age, 13.47 years. The argument that the contract would not be beneficial assumes that Margaret Butler's expectancy *must* be taken as that of a normally healthy person. If that is unsound the argument fails.

Mortality tables are a means of ascertaining "the probable number of years any man or woman of a given age and of ordinary health will live." 5 Wd. & Phr. (1 ser.) 4596. Being based upon the actual lives of persons in normal health, they are not competent evidence of the expectancy of one suffering from a disease threatening abnormally early death. Denman v. Johnston, 85 Mich. 387, 48 N. W. 565. Their use was held erroneous where, in a personal injury case, "the plaintiff was not in average physical health and vitality at the time of her disabling injury." Norris v. Detroit United Ry. 193 Mich. 578, 581, 160 N. W. 574, 575. Margaret Butler suffered from a cancer, which when the contract was made promised to be and was speedily fatal. The malignant growth was close to the brain. The patient had the services of the best of medical and surgical aid. The unopposed evidence that she was actually dying of cancer is confirmed by her early death, May 6, 1927.

■ The widow's illness was of controlling importance to the trustees in determining whether to contract with her for an acceptance of the will. They faced this problem. Should she take under

the will and live but a few months, the payments to her would be relatively negligible. But her renunciation would take from the trust as much as though she were sure to live far beyond normal expectancy. Hers was not a mere demand or claim, uncertain as to result and unliquidated in amount, but an absolute right, unquestioned and unquestionable, summarily to take from the estate over $900,000 in lieu of the very much less valuable benefits offered her by the will. So it was a simple matter of practical common sense to persuade her if possible to accept the will upon any terms assuring a substantial saving. There is no reason why her illness, with its sure promise of early and fatal termination, should not have had weight in the same fashion as does the hopeless insanity of a widow where guardian or court must make the election for her. State ex rel. Percy v. Hunt, 88 Minn. 404, 93 N. W. 314; Van Steenwyck v. Washburn, 59 Wis. 483, 17 N. W. 289, 48 A. S. R. 532.

It is not enough to sustain the contract that it was beneficial to the trust estate. Although not in violation of any express powers of the trustees, it must not oppose the intent of the testator or be subversive of his purposes. The purpose of the testator, in the absence of an express direction disposing of the matter, is the surest guide to decision. John Butler knew that his widow would have the right to renounce and take under the statute of descent. He stipulated what she would get if she accepted; the statute what she would take if she renounced. He willed that if his wife should refuse to accept the provisions of the will "in lieu of her statutory and other rights" she should "not be entitled to receive any money, property or portion of my estate whatsoever under this will as bequest, legacy, income or otherwise." In consequence, it is argued, the trustees have no power to make for the widow a new provision giving her, in the event of her acceptance, much more than the will itself would do. That argument is unanswerable in support of the conclusion that the trustees have no power to change the will. But it has nothing at all to say to their power (not negatived or limited by the will) to compromise an adverse claim which if not compromised would have taken from the trust much more in value than it will lose by reason of the compromise.

It was John Butler's special desire that the specific legacy of corporation shares to his brother Pierce should be kept intact. That being his purpose, and a legitimate one, we are not concerned with the reasons for it or its effect if accomplished. Under the statute the widow would have taken one-third of those stocks. Whether in that event the legatee would have been entitled to compensation need not be determined. The point is that the result would have been the defeat of an expressed purpose of the testator, which may have included results, suggested but not disclosed by the record, on the control of the named "family corporations."

Finally, the will is implicit with the purpose of the testator to fix and maintain the value of the residuary trust at the highest possible figure consistent with the other gifts. But the right of the widow to elect to take under the statute rather than under the will was a *condition* of the entire testament—one not to be gotten rid of by any act of the testator, his executors or trustees, but only to be removed by the widow's election to accept, and that was procured by the contract. Against such a bargain by plaintiffs as trustees, there is certainly no express injunction in the will. And we find nothing permitting its creation by mere implication.

It was the duty of the trustees to be reasonably diligent in the protection of the trust and the interests of the beneficiaries. The will gave them general power of management. "General powers [of trustees] are those which, by construction of law," it is said, "are incident to the *office* of trustee. Every trustee must have them, whether they are named or not in the instrument creating the trust, in order that he may perform the duties imposed upon him." Perry, Trusts (7 ed.) § 473. Among such general duties is the power to compromise doubtful claims for or against the trust estate. Id. §§ 437(a) and 482. The performance of that duty is not conditioned on consent of beneficiaries, who are frequently incompetent to consent or not in being at the time. Subject to restrictions of statute or settlement, a trustee may "do such reasonable and proper acts for the realization or protection of the trust property * * * as the court would sanction if applied to."

Underhill, Law of Trusts & Trustees (8 ed.) 340. (Of course a prudent trustee will always, circumstances permitting, seek such sanction before finally binding himself.) So where by an immediate realization of the trust the trustee would have ruined one beneficiary from whom a large debt was due to the trust estate and would have very seriously prejudiced others, it was held proper for him to arrange with the debtor for payment of the money by instalments. Ward v. Ward, 2 H. L. Cas. 777. Again and on similar grounds it was held that a trustee may surrender a policy of assurance forming part of the property in exchange for one of less amount but fully paid in a case where the one liable to pay the premiums could not possibly have done so. Steen v. Peebles, 25 L. R. Ir. 544. Under our statute giving a cause of action for wrongful death, the representative as trustee for the dependents may compromise without the consent of court or beneficiaries. Foot v. G. N. Ry. Co. 81 Minn. 493, 84 N. W. 342, 52 L. R. A. 354, 83 A. S. R. 395; Aho v. Jesmore, 101 Minn. 449, 112 N. W. 538, 10 L.R.A.(N.S.) 998. As to claims against the estate, the representative is in a different condition under statutes which prevent his allowance of claims and payment of any not "judicially approved." Durfee v. Abbott, 50 Mich. 278, 279, 15 N. W. 454; Dunnell, Minn. Pr. Law, § 873. But given a liquidated demand against an estate, the duty of the probate court to approve of a stipulation for a settlement at around two-thirds of its value would be plain.

Having the power, at least with approval of court, to compromise doubtful issues involving the trust, surely trustees may settle a certain and liquidated claim against the estate at less than the sum due. Suppose that after John Butler's death someone had asserted ownership of one-third of the estate under an adverse and probably valid title. Assume that such a claimant had a written assignment from John Butler of a third of his property and that upon investigation it appeared to the trustees to be based upon valuable consideration and otherwise valid and so enforceable. In such a case it certainly would not be claimed that the trustees had no power to compromise as best they could. But during the six months allowed

for election Margaret Butler's position was stronger than that of our hypothetical claimant. She had the right, by mere declaration filed in the probate court, summarily to take one-third of the property. She contracted not to do it under terms which, if valid and performed, will save the trust over $300,000. A condition precedent to the trustees' ever acquiring that much of the residue is removed. Pro tanto, the trust is preserved and to the beneficiaries is assured the enjoyment of what otherwise never would have been theirs. The contract no more revolutionizes the trust than the amputation of an infected finger to save the hand revolutionizes the whole member.

Being beneficial to the trust, in aid of the purposes of the testator, within the general powers of plaintiffs as trustees, and not opposed to any express or implied direction of the will, the contract was properly approved in the district court.

Order affirmed.

DIBELL, J. (dissenting).

I am unable to agree with the views of the other members of the court and therefore dissent.

