# MAE E. ROGERS v. HERMAN L. BENZ AND OTHERS.[1]

February 16, 1917.

Nos. 20,068—(203).

**Facts.**

1. John E. Rogers in his lifetime had a homestead right in part of a hotel building and in the leasehold interest in the land on which it stood to the extent of one-third of an acre. The rental value of this building was less than the annual charges upon the land and building. He had other valuable property and large debts.

**Action to rescind contract.**

2. He made a will devising his property to executors, giving to his widow an annual allowance, and half the estate on division in the event she should, be alive at that time, her provision to be in lieu of her statutory portion. The widow and the other beneficiaries under the will entered into a contract largely increasing the provision for the widow, and providing that in the event of her death her half of the estate should go to her heirs. By the contract she gave up her statutory rights. She sues to set this contract aside and to be restored to her statutory rights alleging fraud, overreaching and that the contract was an improvident one and made without proper understanding of her rights.

**Will — terms cannot be changed by beneficiaries.**

3. Beneficiaries under a will cannot modify the terms of the will of a deceased person, but they may by contract among themselves make disposition of the property rights acquired under the will.

**Fiduciary relation between parties to contract.**

4. The executors and the direct beneficiaries under the will were parties to the contract, one of the executors was the confidential friend of plaintiff's husband, and the attorney for the executors was her husband's attorney. These parties were under obligation to make full disclosure to plaintiff of her rights and to deal with her with the utmost fairness.

**Contract between executors of will and widow of testator valid.**

5. The court found that these parties fully, fairly and accurately stated to plaintiff her rights and all facts and information within their knowledge, and acted with entire fairness and good faith toward her, and that

1Reported in 161 N. W. 395, 1056.

the property rights secured to her under the contract afforded her better protection than her rights under the law. These findings are sustained by the evidence. On this state of facts the contract is *held* valid.

Walter W. Rogers, Herbert V. Rogers and Herman L. Benz petitioned the probate court for Hennepin county for the allowance of a will of John E. Rogers, deceased, which was executed in the year 1905. The will was duly admitted to probate and the petitioners on February 26, 1912, qualified as executors. On February 28 they were authorized by order of the probate court to carry on the hotel and other business of testator.

On February 3, 1912, a contract was executed in which plaintiff, the widow of testator, the executors of the will and the brothers and sisters of testator, with their spouses, undertook to modify the provisions of the will.

On March 21, 1914, plaintiff petitioned the probate court to permit her to withdraw the instrument which purported to be her acceptance of the terms of her husband's will, which was signed by her on February 3, 1912, at the time she signed the contract, to direct that the renunciation of the will filed on the same day as the petition should operate as a valid election on her part to take the rights in her husband's estate given her by law the same as if the document had been filed *immediately after the probate of the will,* to direct the payment to her by the executors of the net rentals of the homestead, and to decree that the premises described in the petition should be set aside to her as the homestead of deceased agreeably to the statute. The petition alleged that until within 10 days of its presentation petitioner did not know that she was entitled under the law to inherit the homestead of her husband and his entire title thereto, free and clear of any of his debts, and did not know that by the execution of the contract and by the signing of the acceptance the homestead became subject to the payment of debts of her husband, and by so doing petitioner was surrendering to the brothers and sisters of her husband property rights of the value of many hundreds of thousands of dollars or property to which petitioner would otherwise have been entitled; that had she understood or been advised of the effect thereof she would not have signed either of the instruments but would have renounced the will and would have

elected to take the rights given her by statute. The petition alleged that Frank R. Hubachek and defendant Benz assured her if she would assent to the contract to modify the will she would secure more from her husband's estate than could be secured in any other way.

After a hearing the probate court, Dahl, J., made findings that when such assent to the will was executed, petitioner did not intend thereby unequivocally to assent or elect to accept the provisions made for her by the will, nor did she understand the same to constitute an election by her to accept them nor an assent to the disposition of the property under the terms of the will, nor was it intended by the executors or the legatees to constitute an election by petitioner to accept the provisions of the will; that the petitioner claimed the contract was invalid and asserted her intention to bring an action to cancel it; that the other parties to it asserted that it was a binding agreement, but the determination of its validity or invalidity was not within the jurisdiction of the probate court.

As conclusions of law the court decreed that petitioner was entitled to an order of the court permitting her to withdraw and revoke the purported assent to the terms of the will, that she was not entitled to take the interest in her husband's estate given her by the law; or the premises claimed as homestead of deceased, "but without prejudice to the rights of petitioner to again apply to this court for said relief, after the validity of said agreement shall have been determined by a court of competent jurisdiction, if she shall then deem it advisable so to do."

The present action was brought in February, 1915, in the district court for Hennepin county to cancel the contract of February 3, 1912, to have the executors account to plaintiff for the moneys received by them from the testator's property in which she had an interest, and to enjoin defendants during the pendency of the action from selling any property in which she had an interest. The case was tried before Leary, J., who made findings and ordered judgment in favor of defendants. Plaintiff's motion for amended findings was granted in part and denied in part. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

The complaint, among other matters, alleged that in March, 1914, plaintiff first learned that one of the documents signed by her on

February 3, 1912, was an acceptance of the provisions of her husband's will, but nothing had been said to her about signing any acceptance of the will and she had no intention of doing so; that as soon as she acquired the information she filed her petition with the probate court for leave to withdraw the acceptance from its files and set up the proceedings had under that petition.

The complaint alleged that the fair value of the homestead which descended to plaintiff by the Minnesota law (over its proportion of incumbrance on the entire building and premises) was not less than $230,000, and that plaintiff's interest in the entire leasehold which descended to her was $236,666.66; that after her husband's death and before the execution by plaintiff of the contract the contingent interest of all the defendants in the estate under the will and on the appraised valuations could not exceed $41,476.20 in value, if plaintiff should die before final distribution of the estate, and could not exceed $33,357.15 in value if plaintiff should then be living; that the effect of the contract was to reduce plaintiff's right in the principal of the estate from the appraised value of $185,786.50 to $113,631.35, to transfer the difference, viz., $72,155.15 from the plaintiff's right in the estate and to add the same to the maximum interest which defendants or the survivors of them could otherwise have taken under the will, and had the further effect of reducing plaintiff's right in the net rentals and business profits from about $40,000 per annum to $6,000 per annum; that defendants Benz and Hubachek in fact acted in concert in the interest of and for the benefit of defendants to induce her to surrender the rights which she already had in her husband's homestead and estate but of which she was ignorant and to confine her to the much less valuable interest in the property provided for her in the contract, thereby greatly increasing the value of defendants' interests in the estate at the expense of plaintiff; that plaintiff was wholly ignorant of such facts until the same were brought out in testimony of certain of the defendants in the probate proceedings mentioned, but on the contrary at all times from January 30, 1912, down to two years thereafter, plaintiff believed that contract secured to her all rights which she had or could lawfully have or secure in the property and business interests left by her husband, and that in persuading and advising her to execute it, said Benz and Hubachek were acting as her confidential friends and business and legal advisers and were so advising her for the most advantageous protection of all her rights as they proposed and represented to her. The complaint alleged that the contract was un-

conscionable and overreaching and secured to the defendants inequitable and unjust advantages over plaintiff.

The separate answer of the executors alleged that by the terms of the will they were authorized to continue the business of testator; that in order to determine whether to so continue the business it was necessary and proper for the executors to ascertain whether plaintiff would choose to take the provisions for her as widow of testator by Minnesota law or would accept the provisions of the will in her behalf made, all of which was known to plaintiff at the time of making her election and joining in the contract; that at that time all the devisees in the will, plaintiff included, desired that the executors should continue the business enterprises of the testator; that plaintiff made objection to the smallness of the periodic payments provided by the will and to increase the amounts and make better provision for her than was made under the will and to make possible the continuation of said business the contract was in good faith and for a valuable consideration executed by all the parties thereto and to determine the fact that plaintiff accepted the provisions of the will and would take under its terms and in the hope that after its execution the executors would, pursuant to their authority, continue to operate the business to the profit of all parties; and after the execution of the contract the executors, in reliance upon such election of plaintiff to take under the terms of the will, continued to conduct the business enterprises and as executors incurred large obligations, entered into various contracts and assumed various liabilities, purchased a large quantity of merchandise for the use of the enterprises and from the receipts and profits have paid a large amount of claims against the estate, all to the great profit of all parties interested in the estate, including plaintiff, and with her knowledge and consent and all prior to the institution of this suit.

Those portions of the will of testator which refer to his wife and the conduct of the business by his executors are as follows:

"Item 3. I hereby bequeath to my wife, Mae E. Rogers, all my household furniture and furnishings of every kind, including library and all other personal property which may be used in connection with my household at the time of my death; also my horse and vehicles, including harness, robes, blankets and other furnishings for the same and such diamonds and jewelry as I may own at the time of my death.

"Item 4. * * * It is my wish that my executors continue to

carry on the liquor business in which I am now engaged at No. 516-518 Hennepin Avenue and No. 29 South Fourth Street for a period of at least five (5) years after my death and longer if they deem necessary; also that they conduct and continue the hotel business now carried on by me as aforesaid; also that they continue the liquor business at No. 46 South Fourth Street and at the corner of Fourth Avenue South and Fourth Street until such time as the business at these two points last named can be disposed of to advantage; also that they retain my stock in the Unique Theatre Company and take part in the conduct of the business of that concern, in connection with my lease to it of the premises occupied by it; it is my wish and desire that these things be done by my executors as in this item specified, but it shall not be obligatory upon my said executors to carry out my wishes in these particulars, if in the exercise of their best judgment, they deem it for best interest of my estate to do otherwise.

"Item 5. I hereby authorize and direct my executors, as soon as may be for the best interest of my estate, and compatible with my wishes as hereinbefore expressed, and in any event within ten (10) years after my death, to sell and convey all my property, real and personal, of every name and nature, not hereinbefore specifically bequeathed, or any part or portion thereof, and finally to convert the same into cash and invest the same in good first mortgages upon improved and occupied farm lands and to that end I hereby authorize and empower my said executors, or either two of them, to make, execute and deliver all necessary deeds and instruments of conveyance and to do and perform all acts requisite, or in any manner necessary to sell or convey said real or personal property, or any part of the same; it being my intention to give and grant to said executors full power and authority to convert my entire estate into cash by the sale or conveyance of the same or any part thereof, whenever they may think best so to do and within ten (10) years of my death in any event, and to invest the proceeds of the same in good first mortgages upon farm lands which are improved and occupied, and to that end it is my intent that they shall have full power to make, execute and deliver good and sufficient deeds, conveyances, releases and acquittances, and until all of said estate is so converted and invested and until the full execution of the trust herein created in my said executors, it is my further intention to and I hereby authorize and empower said executors to handle, manage and so invest my estate, hereby reposing full confidence in their ability and integrity in the execution of their trust.

"Item 6. I further give and bequeath unto my said wife during the term of ten (10) years next following my death and until the division of my estate provided for in item eight (8) hereinafter, all the rents, profits and income arising or in any manner accruing from my said estate, to the extent of Two Thousand Five Hundred (2,500.00) dollars per annum, and I authorize and request my said executors to pay to her said income, to said extent, at such periods during each year, monthly, weekly, or otherwise, as they deem proper; or instead of paying all the same to her personally, that they pay to her one-third of the bequest provided for by this item and use the remaining two-thirds thereof in furnishing and providing her with proper maintenance and support, according to her rank and station and her reasonable wishes and desires; and in case the net rents, profits and income of my estate shall not equal the sum of Two Thousand Five Hundred (2500.00) dollars per annum, then I do authorize my said executors, if they deem best, to use from the principal of my estate for the purpose of supporting and maintaining my wife, and I desire that my executors deal liberally with my wife to the end that she shall be comfortably maintained and supported and all her wants fully supplied.

"Item 7. It is my will that my executors shall hold, possess, invest and manage my estate, except the bequest made to my wife in item three (3) hereof, for a period of ten (10) years after my decease, for the use and benefit of my wife, and my brothers and sister hereinafter named.

"Item 8. Upon the expiration of said period of ten (10) years, in case my wife be living at the expiration of said time, I hereby further order and direct my said executors to make a division of my then estate, and to set apart and convey to her for her sole use and benefit, the one-half part of my entire estate as it may exist at that time, and to set apart and convey the remaining one-half of my said estate to my four brothers and my sister, to wit: * * *

"Item 9. The devises and bequests herein made to my wife are made in lieu of all her dower and statutory rights and interest in and to my estate and said devises and bequests shall be received and accepted by her in lieu of such dower and statutory rights to which she would at the time of my death be entitled by law. I urgently request my wife to accept the provisions made for her in this my will in lieu of any interests which she might otherwise be entitled to by law, for the reason that the provisions made for her

herein are so made by me fully believing them to be far better for her, than such statutory interests, in this, that she will without risk or loss, be practically certain of an ample income during her lifetime, with which to supply all her reasonable wants and comforts.

"Item 10. I desire that my executors shall make accountings and settlements at least once a year, filing their said accounts with the clerk of the probate court and procuring the said court to pass upon the same, after due and legal notice to my wife and all parties in interest."

The contract to modify the will after naming the widow as the first party, the executors of the will as the second parties and the brothers and sister of the testator, with their spouses, as the third parties, continued as follows:

"Witnesseth, that whereas, the first and third parties are the sole benficiaries of the last will and testament of said John E. Rogers, deceased, a copy of which is hereto attached and made a part hereof and marked Exhibit 1, and whereas all the parties hereto are desirous of modifying certain provisions of said will; Now, therefore, in consideration of the premises and of the mutual promises, grants and conveyances herein made and contained, and of the sum of One Dollar by each party to the other in hand paid, the receipt whereof is by each party hereto severally confessed and acknowledged, it is agreed,

"1. That the second parties shall have the right and they are hereby given full power and authority to pay to the party of the first part, until the final settlement and distribution of said estate, and in lieu of the sum of Twenty-five Hundred Dollars ($2500) to be paid to the first party annually under the provisions of item six (6) of said will, the sum of Five Hundred Dollars ($500) per month, which payments are hereby made a first lien on said estate, subject only to the debts of the deceased; the first party shall also have the right and privilege of living in the room numbered 332 which she now occupies in the 'Rogers Hotel' building and of taking her meals in the Rogers Cafe, in said building, so long as said Hotel and Cafe are owned, operated and conducted by the estate; and she shall not be obliged to pay any rent, or other charge whatsoever, for living in said room and she shall be obliged to pay only one-half ($\frac{1}{2}$) the regular schedule rates customarily charged to the customers of said Cafe for her meals at said Cafe; provided however that this agreement as to the price of her meals

at said Cafe shall cease in the event said executors cease to conduct and operate said Cafe."

Subdivisions 6 and 7 of the contract are as follows:

"6. The said executors are hereby given full power and authority to sell, convey, mortgage, lease or hypothecate all the property belonging to said estate, whether real, personal or mixed, or any item, part, or portion thereof, at such time or times and for such sum or sums, and on such terms and conditions, and to such person, or persons, including themselves or either of them as individuals, as to them shall seem meet and proper; they are also given full power and authority to reduce and convert said estate to money or other property, and they may close said estate and make distribution thereof prior to the ten year term mentioned in said will, if they deem proper so to do.

"7. Mae E. Rogers, party of the first part, hereby accepts the provisions and benefits of said last will and testament as modified by this contract in lieu of all benefits and provisions otherwise given her by law."

*A. B. Jackson* and *J. W. Gilger,* for appellant.

The contract is void on its face when read in connection with the admissions of the defendants: (1) Because it is an attempt by living persons to modify the terms of a will of a deceased testator, a thing which is impossible under the law. Cowie v. Strohmeyer, 150 Wis. 401, 136 N. W. 956; Re Dardis Will, 135 Wis. 457, 115 N. W. 332; Toms v. Williams, 41 Mich. 552, 2 N. W. 814; Brady v. Hanson, 68 Misc. 198, 123 N. Y. Supp. 645; Providence Tool Co. v. Norris, 2 Wall. 45, 17 L. ed. 868. (2) If the intent of the parties to alter the testator's will could be disregarded and the paper be considered merely as an agreement between the parties thereto it would be against public policy and lacking in mutuality of either obligation or remedy without any good or valuable consideration moving to the party of the first part to support the relinquishment by her to the other parties which they claim it does relinquish, and the consideration, if any, moving to the parties of the second and third parts is unlawful, against good morals and against public policy. The contract was signed by all parties before the will was admitted to probate. So we have the case of a tripartite agreement with one party assuming to act in a representative

capacity which it did not possess. Suppose the court had ignored nomination of the executors in the will and appointed others, would the contract have bound such other parties? Re Swenson's Estate, 55 Minn. 300, 308, 310, 56 N. W. 1115; Sears v. Russell, 8 Gray 86; Lincoln v. Perry, 149 Mass. 368, 374. (3) It was made by plaintiff upon the express condition that its effect would be to alter the express terms of her husband's will and would make his will effective "as so modified." Considering the whole instrument, the intent of the parties was to make a will for the deceased testator because they were dissatisfied with the disposition he made of his property and they undertook to revise the will to conform to their own ideas.

The first section of Laws 1875, c. 40, abolished dower and curtesy. Section 2 provided that upon the death of a husband seized or possessed *of any estate in lands* the surviving widow should be entitled to hold for the term of her natural life the homestead of the deceased *"as such homestead is defined in the statutes relating to homestead exemption,"* free from all claims on account of the deceased's debts. Laws 1876, c. 37, § 2, was in effect a mere repetition. Section 63, c. 46, Laws 1889 (from what is commonly called the Probate Code of 1889), was taken from section 2 of the 1876 law. Section 3647, R. L. 1905 (G. S. 1913, § 7237) was taken by the revisers from section 63 of the Probate Code of 1889. It follows: (1) Our present law for the descent of the homestead originated with the act of 1875 abolishing dower and curtesy and providing for estates of inheritance or otherwise in lieu thereof; (2) The 1875 law gave the surviving spouse a life estate in the homestead as such homestead was defined in the statutes relating to homestead exemption on the death of a husband or wife, who was seized or possessed *of any estate in lands;* (3) The right to such life estate in the homestead by Laws 1876, c. 37, § 2, preserved and continued in addition to ("also") such other descent of property as was provided by the other sections of the 1876 law; (4) This provision for the descent of the homestead to the surviving spouse was re-enacted in the Probate Code of 1889 with the extension thereof so as to give the surviving spouse *the entire homestead and homestead right* of the deceased spouse instead of merely a life interest therein as provided by the 1875 and 1876 laws; (5) The 1905 revisers simply carried forward section 63, c. 46, Laws

1889, omitting for brevity only and with no intention of changing the law, the words "as such homestead is or may be defined by the statutes relating to homestead exemptions" and using the words "exempt from all debts *which were not valid charges thereon at the time of such death."* The 1905 revisers did not intend nor effect any change in the law with respect to the definition or descent of the homestead as specified in the 1889, 1876 and 1875 laws. See R. L. 1905, § 5508 (G. S. 1913, § 9402) and the revisers' notes page 30 in which they say "the descent of property has been left in this chapter as heretofore." See Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243; State v. Stroschein, 99 Minn. 248, 109 N. W. 235; Schmoll v. Lucht, 106 Minn. 188, 191, 118 N. W. 555; Austro-Hungarian Consul v. Westphal, 120 Minn. 122, 127, 139 N. W. 300; Thompson v. Peterson, 122 Minn. 228, 142 N. W. 307.

With this rule of statutory construction in mind and by reference to the earlier language of the enactment which is now R. L. 1905, § 3647 (G. S. 1913, § 7237) as it previously appeared, this section should now read as follows: "The homestead of the deceased, *as such homestead is or may be defined by the statute relating to homestead exemptions,* shall descend, etc., to the surviving husband or wife." With this reading of the statute the only question becomes, what was the homestead of the deceased as defined by the statute relating to homestead exemptions? This is plainly answered by R. L. 1905, §§ 3452, 3453 as amended by Laws 1907, c. 335, § 1, and R. L. 1905, § 3455 (G. S. 1913, §§ 6957, 6958, 6960). These sections prescribe that the house owned and occupied by the debtor as his dwelling place, together with the land upon which it is situated, to the amount limited and defined, *shall constitute the homestead of such debtor and his family,* and shall be exempt and such homestead may include any quantity of land if within the platted part of an incorporated place having 5000 inhabitants or more (not exceeding one-third of an acre) and any *interest in the land* whether legal or equitable shall constitute ownership within the meaning of the chapter, and that the dwelling house so owned and occupied shall be exempted *though situated on the land of another.*

Our supreme court has held that the object and policy of the homestead laws is highly remedial and its provisions should be liberally construed to carry out the legislative intent. Keith v. Albrecht, 89 Minn. 247, 94 N. W. 677; Kaser v. Haas, 27 Minn. 406, 408, 7 N. W. 824; Wilder v. Haughey, 21 Minn. 101. Our supreme court has also held that "no change in the policy of our homestead law was made by the revision of 1905, and that the same *must be measured by area and not by the uses and purposes to which the property may be devoted other than residence purposes.*" Lockey v. Lockey, 112 Minn. 512, 515, 516, 128 N. W. 833, 834; Stauning v. Crookston Merc. Co. 134 Minn. 478, 159 N. W. 788; Nat. Bank of the Republic v. Banholzer, 69 Minn. 24, 71 N. W. 919; and cases cited therein hold there is no limitation in this state as to value or as to use so long as the homesteader actually resided on the premises.

So far as the contract under consideration is claimed to be an election by plaintiff as between her rights under the statute and under the law, the case falls within the principles of the decisions in which courts have deemed it the special duty of equity to relieve widows from ill-considered or improvident elections as between their rights under the law and the provisions of the husband's will. Hindley v. Hindley, 29 Hun, 318; Larrabee v. Van Alstyne, 1 Johns. 308; 2 Scribner, Dower, 484; Macknet v. Macknet, 29 N. J. Eq. 54; Pusey v. Desbouvrie, 3 P. Wms. 315; Re Woodburn's Estate, 138 Pa. St. 606, 21 Atl. 16; Brown v. Brown, 108 Mass. 386; Watson v. Watson, 128 Mass. 152, 155; Garn v. Garn, 135 Ind. 687, 35 N. E. 394; Evan's Appeal, 51 Conn. 435; Elbert v. O'Neil, 102 Pa. St. 302; Hall v. Hall, 2 McCord Eq. 269, 280, 281; Hill v. Hill, 62 N. J. Law 442, 41 Atl. 943; Snelgrove v. Snelgrove, 4 Desaus. (S. C.) 274; Wake v. Wake, 1 Ves. 335; Radl v. Radl, 72 Minn. 81, 86, 75 N. W. 111; State v. Probate Court, 129 Minn. 442, 152 N. W. 845. The contract should be cancelled at the option and on the prayer of plaintiff, under the general principles of equitable jurisprudence applicable to the facts of this case. Macklanburg v. Griffith, 115 Minn. 131, 131 N. W. 1063; Ekberg v. Swedish-Am. Pub. Co. 114 Minn. 196, 130 N. W. 1029; Shevlin v. Shevlin, 96 Minn. 398, 105 N. W. 257;

Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; King v. Remington, 36 Minn. 15, 29 N. W. 352; Ashton v. Thompson, 32 Minn. 25, 18 N. W. 918; Huguenin v. Baseley, 14 Ves. 273; 1 Story's Eq. Jur. § 309; Ludington v. Patton, 111 Wis. 208, 86 N. W. 571; Wheeler v. Smith, 9 How. 55, 13 L. ed. 44; Dunn v. Dunn, 42 N. J. Eq. 431, 7 Atl. 842.

*James E. O'Brien* and *Charles J. Tryon,* for respondents.

The contract was an election which cannot now be recalled; it was an election by the widow but taken under the terms of the will, both express and implied. An election so made is irrevocable. If fairly made with opportunity for reasonable information, it cannot be revoked at the wish of the party electing. If made without opportunity for reasonable information, it cannot be revoked to the prejudice of others who have lawfully acted in reliance upon it. An election is an item of conduct and is as much basis of estoppel as any other act. State v. Probate Court, 129 Minn. 442, 445, 446, 152 N. W. 845. Plaintiff's election required no consideration. Erickson v. Robertson, 116 Minn. 90, 95, 133 N. W. 164.

It was fairly made on full information and was irrevocable. Young's Estate, 202 Pa. St. 431, 439, 440, 51 Atl. 1036; Leonard v. Crommelin, 1 Edw. Ch. 205, 209, 210.

Plaintiff placed no confidence in a fiduciary who received advantage; she acquiesced; she was barred by laches. Laches may arise not only from plaintiff's, delay before her employment of her attorneys, but by their delay in the prosecution of proceedings for relief. Sweet v. Lowry, 123 Minn. 13, 16, 17, 142 N. W. 882; McQueen v. Burhans, 77 Minn. 382-387, 80 N. W. 201; Knappen v. Freeman, 47 Minn. 491, 493, 50 N. W. 533; Reynolds v. Franklin, 41 Minn. 279, 282, 43 N. W. 53.

If there was a homestead, it was not an estate in lands which would descend to the widow. The option was personalty and both leaseholds and options passed to the executors. Our statute providing for the descent of a homestead must be limited to the descent of *inheritable* title in real estate occupied by the deceased as a home.

The section providing for descent of homestead (G. S. 1913, § 7237)

must be construed in relation to section 7236. Both sections prior to the revision of 1905 were in chapters relating to descent of real estate. Deceased's interest in the hotel property consisted of leaseholds each with an option for purchase which had not been exercised. Such leasehold options are personal property and go to the executors. They are not included in the terms of the statute giving the homestead to the widow because that relates only to the homestead of a deceased party in real estate for the descent of which provision is made. 1 Williams, Executors (6 Am. ed.) Notes pp. 749-750. The option in the leaseholds is nothing but an unaccepted offer of purchase. It passes to and vests in the executors of the deceased. See 'Hazard Power Co. v. Loomis, 2 Disney, 544.

HALLAM, J.

1. John E. Rogers died January 22, 1912. He left surviving a widow, this plaintiff, no children, four brothers and one sister. He owned much property, heavily incumbered. The principal items of property were as follows:

He owned two 100-year ground leases of adjoining tracts at the corner of Fourth street and Nicollet avenue in Minneapolis. The rental to be paid under the two leases was then $20,900 a year and was increasing at the rate of $300 a year. Each lease gave an option to buy, the price for the two tracts being $400,000.

The buildings on this land deceased had purchased, and on the purchase price he owed nearly one hundred thousand ($100,000) dollars, payable in monthly instalments. These aggregated over $9,000 a year, besides interest on the deferred payments. His interest in this property was further incumbered by a mortgage, called the Blatz mortgage, for $25,000, payable in instalments of $500 a month. These buildings deceased had remodelled into a single unit and had operated here the Rogers hotel and café, the hotel at a substantial profit, the café at a large loss. Portions of the ground floor he leased for business purposes.

The court found that the total amount required to make the payments of rent, of the instalments of the purchase price of the buildings and of the mortgage, together with the necessary expenditure for upkeep, was $67,640. A careful review of the evidence shows that this finding is sustained by the evidence. The cash rent received from subtenants was $34,500. This did not include the hotel or café. The court found the annual rental value of these to be $23,000. This finding is sustained by the evidence, though deceased in fact charged himself on his books with $30,000. This property was therefore not producing the amount necessary to carry it.

The court found that the value of the land and buildings was not more than the amount of the purchase price named in the options to purchase the land and the amount unpaid on the purchase price of the buildings and the incumbrance thereon. These aggregated a little over $500,000. There is evidence to sustain this finding, though some witnesses placed the value higher.

Deceased also owned a saloon at 29 South Fourth street, operated in the building above mentioned in the name of his brother Walter W. Rogers. Walter had an undivided one-third interest in the profits of the business. This business netted deceased about $20,000 a year.

He owned also a two-story building on Hennepin avenue incumbered by two mortgages for more than $200,000. In this building he operated the "Hub" saloon. This netted him about $20,000 a year. In this building was also operated the Unique Theatre. Deceased had a half interest in this. This investment was profitable. In this building he also operated a delicatessen which was a small producer.

He owned a saloon business at Fourth street and Fourth avenue south, conducted in his name. This was a small producer.

He owned a half interest in 9,000 acres of land in Texas. On his share, he owed $10,500 and was obligated on account of one Adams, his co-owner, in about $27,000 more, and lawsuits were pending involving an alleged liability of $10,000 more.

He also owned merchandise worth $30,000; had $8,419.76 in the bank, about $2,500 cash on hand; had a policy of life insurance pledged as collateral to the second mortgage on the Hennepin avenue property, and had some accounts receivable of doubtful value.

136 M.—7

He also owned a farm near Lake Minnetonka which stood in the name of his brother Felix and some land in Wisconsin and North Dakota. These properties were worth in all about $20,000, but were unproductive.

In addition to the debts above mentioned, he owed to banks, $38,000, on accounts $28,000, to his brother Walter, $16,200, and $2,200 on a note. His debts in all amounted to about $420,000. His property was worth more.

Deceased was a man of much business capacity. His net income from his various operations the court found to be $50,000. It was at least this much.

2. Seven years before his death, deceased made a will. By its terms he named Herman L. Benz, his brothers, Walter W. Rogers and Herbert V. Rogers, as executors, and authorized them to hold and manage his estate for ten years with power of sale and power to earlier settle and divide the estate. By this will he gave plaintiff his household and personal belongings, and an allowance of $2,500 a year until division of the estate. At the end of ten years, if the widow and any of the brothers or sister survived, then the estate was to be divided, one-half to the widow, the other half to the surviving members of his family. If the widow died before the end of that period, the whole estate was to go to the surviving members of his family. If the widow survived but no brother or sister, then all was to go to the widow. If neither widow, brother nor sister survived the ten years, then the estate was to go to his heirs according to law. The bequests to the widow were expressly "in lieu of all her dower and statutory rights" and he urgently requested that she accept the provision made for her in the will, stating that it was far better for her than her statutory interest, in that it gave her an ample income without risk of loss.

The widow was dissatisfied with the appointment of two of the Rogers brothers as executors and trustees and with the provision made for her in the will. Soon after the death of deceased, negotiations were begun which were participated in by the widow, the Rogers brothers, Benz, and Frank R. Hubachek, the attorney of deceased. The result of these negotiations was that a contract was entered into by the terms of which it was stipulated that the widow is to receive an allowance of $500 a month, the use of the room she occupied in the hotel, and her meals at the hotel café

[1]See correction in third paragraph on page 921.

at half the regular rates. Upon the expiration of ten years, if living, she is to receive half of the estate, and, if not living at that time, her share is to pass to her heirs or personal representatives or assigns. Felix is to take the Minnetonka farm as his share, releasing all other claims, and Walter is to take his interest in the 29 South Fourth street bar and also share with his brothers and sisters in their half of the estate as well.

Plaintiff now seeks to set this contract aside and asks to be restored to her rights under the law, alleging that the contract was obtained from her by fraud, by undue advantage "taken, to their own manifest benefit and profit, by persons holding a fiduciary relationship," and that she acted without proper understanding on her part of her lawful rights, and that the contract was "grossly inadequate if not entirely lacking in consideration."

3. Plaintiff speaks of this contract as a "contract to modify a will," and urges that living persons cannot modify the will of a deceased testator. Appellant may be excused for calling this a contract to modify the will for the parties in the contract used similar language. Viewed as a modification of a will, it could not be operative. Beneficiaries under a will cannot modify the terms of the will. That is, the probate court could not take cognizance of it as changing the will, for a probate court can only distribute the property according to a will of a testator or according to the law of descent in case of intestacy. It cannot distribute property according to the contract of parties. See Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9, 57 Am. Rep. 59; Dobberstein v. Murphy, 44 Minn. 526, 17 N. W. 171.

Nor could the contract affect the rights of those not parties to it, and it may be conceded that as applied to those who would take under the will in the event of the death within ten years of all parties to the contract, the contract was of no effect.

It is very clear, however, that the parties might by contract make any disposition they pleased of the property rights acquired by them from deceased, whether acquired under the will or independent of it. This is what they in fact did do.

4. The charge of fraud and unfair dealing is directed mainly at Benz and Hubachek. Not the slightest relation of trust or confidence existed between plaintiff and the Rogers brothers. She disliked and distrusted

[1]See limitation in last paragraph on page 92l.
[2]See limitation in second paragraph on page 92l.

them heartily. Benz and Hubachek were not in the position of trustees contracting with a *cestui que trust* for their own personal benefit. Neither had any personal interest in this contract. Yet it cannot be doubted that there was an obligation upon some one to make to plaintiff full disclosure of her rights, and upon all was the duty to deal with her with the utmost fairness. A widow, heir to an estate, without business training, is the ward of the courts, and the courts will jealously guard her rights and secure them against the slightest imposition. Benz was an executor named in the will. As such, he was a trustee. He was also her husband's confidential friend. Hubachek was her husband's attorney. All parties knew that she relied implicitly on both. If either abused this confidence the courts should afford relief, for, "if confidence is reposed, it must be faithfully acted upon, and preserved from any admixture of imposition," and "if the means of personal control are given, they must always be restrained to purposes of good faith." 1 Story, Eq. Jur. § 308.

Even if they practiced no fraud, still if plaintiff was, through ignorance, or want of disclosure of her legal rights, or of the condition of the estate, led into an improvident contract of settlement, a court of equity will relieve her therefrom. Brown v. Brown, 108 Mass. 386; Garn v. Garn, 135 Ind. 687, 35 N. E. 394; Ludington v. Patton, 111 Wis. 208, 86 N. W. 571; State v. Probate Court of Hennepin County, 129 Minn. 442, 152 N. W. 845, L. R. A. 1915E, 815; Corey v. Corey, 120 Minn. 304, 139 N. W. 509.

5. If, however, the contract is in all respects fair, understandingly made, and free from overreaching or fraud, it is valid and must stand. There are two obstacles to the granting of any relief to appellant:

(1) The court finds that Hubachek "fully, fairly and accurately stated to the plaintiff what her legal rights were," including her right to renounce the will and claim her homestead rights, that they disclosed to her the facts and information within their knowledge in relation to the estate, and that each acted with entire fairness and good faith toward plaintiff. We have examined the record with much care, and it is clear to us that there is evidence which amply sustains this finding.

(2) The trial court found that this was not an improvident contract, but that, on the contrary, the property rights secured to plaintiff thereby afford better protection and assurance than any property, interests or

rights which plaintiff could have expected to realize had she chosen to stand on her rights under the law. We regard these findings as sustained by the evidence.

The contract gave plaintiff a decided advantage over the terms of the will. Instead of $2,500 a year, it gave her $6,000, a home and half price fare at the café, and, instead of a half interest in the estate contingent on her living until it was divided, it gave her a vested half interest in the estate on division.

We are more interested however in a comparison of her rights under the contract and her rights under the law. As compared with her rights under the law, her rights under the contract stand thus: Plaintiff had the right to repudiate the will and take her statutory portion. The provisions of the will being given expressly in lieu of her statutory portion, she could not take both. The hotel being the home of deceased and plaintiff, she was entitled to hold it as a homestead exempt from all debts not a lien thereon, to the limit of one-third of an acre. Gowan v. Fountain, 50 Minn. 264, 52 N. W. 862; In re Emerson's Homestead, 58 Minn. 450, 60 N. W. 23. The hotel buildings covered somewhat more than one-third of an acre. She was also entitled to an allowance for maintenance during the settlement of the estate, and to one-third or perhaps one-half of all other property, subject to payment of the debts of the estate.

Had the property left by deceased been the unincumbered fee of real estate, and had he left no debts, it is quite probable that her rights under the law would have been greater than her rights under the contract. Had matters then stood as they stand now after five years effective administration, her rights under the law would doubtless have been preferable. But no such situation existed. The debts were large. The bank, doubtful of what would happen, since the personalty of deceased had been withdrawn, applied the ready cash on deposit on its indebtedness. One saloon license had been canceled. It was feared the others might be. Plaintiff was confronted by this situation. If she elected to take what the law gave her, she could take as her homestead only part of the hotel building. Yet it was all used and operated as a unit. She would not be entitled to her share in the balance of the estate until the debts were paid. Then she would receive a share of what should be left. What that would amount to was problematical. To meet present needs it was nothing to her. She

might have an allowance for support but none for the purpose of carrying on business. She could not even claim the furniture of the hotel. She would have found herself with buildings on leased land, heavily incumbered. She would have faced an annual charge of $67,640 with fixed rentals of $34,500, and a building for a hotel and café which she must either lease or operate herself. As for leasing, she had no tenant. If she found one, the rental value was not enough to pay the annual charges. As for management herself, she was poorly equipped in person and without present means. It is a little difficult to see how she could have sustained the financial burden that she must assume. All her husband's Minneapolis interests had been managed as a unit. If so managed for a few years the prospects were good for developing them to a valuable estate. Splitting them up, managing them in parcels, selling part to pay debts, mean great sacrifice. The contract kept the estate as a unit. This was her husband's purpose and will. Subsequent events have proven the soundness of his judgment. Under this method of operation debts have been largely reduced. There is every reasonable prospect that the contract if carried out will give plaintiff a valuable property and in the meantime she enjoys a substantial income. The trial court was justified in finding that the contract was not an improvident one.

Two things more should be mentioned. The contract is assailed because it gives to Walter the interest in the 29 South Fourth street bar and also a share with his brothers and sister in their half of the estate, whereas the will gave him only one of these in the alternative. The portion of the contract defining Walter's interest in this property is not wholly free from ambiguity. It is not altogether clear whether the contract means that Walter continues to own the same one-third interest given him by the will, or whether it means to vest in him the whole ownership of that business, in which event it will not be an asset of the estate to be divided. Counsel for Walter in his brief sets this question at rest by conceding that the contract does not vest the whole ownership in Walter, but that he merely retained the right therein mentioned in the will, and that the reason for the peculiar language of the contract was that the parties desired to place the whole title to this saloon in Walter in order to protect the license against question by municipal authorities. So construed, this portion of the contract, while it gives Walter more than his share

under the will, takes nothing from plaintiff, but takes only from the brothers and sister. Of this plaintiff cannot complain.

The other provision of the contract calling for special mention is the one which gives to the executors power to sell "to such person, or persons, *including themselves,* or either of them as individuals, as to them shall seem meet and proper." If this provision were inserted with the purpose of giving the executors power to buy of themselves for their own personal benefit, it would go far to cast suspicion upon the whole contract. By its terms, the contract gives this power, but the evidence on the part of defendants is that the purpose of this provision was to enable the executors to convey any of the liquor saloons to themselves as individuals in order to protect the business from attack on the ground of legality, because of its being conducted by executors and not by an individual. No attempt has ever been made on the part of any executor to buy. Should they attempt to do so, the courts in which the estate is administered can amply protect the rights of all parties. In view of the explanation given, we think this clause should not be held to invalidate the contract.

Order affirmed.

After reargument the following opinion was filed on May 4, 1917:

HALLAM, J.

After full reargument and careful reconsideration of this case, we are of the opinion that the original decision should be adhered to.

The tri-partite agreement which is the subject of the action was primarily an agreement between persons interested in an estate readjusting their interests therein, subject of course to the demands of creditors or other persons who might be interested in the estate. The parties of the second part, executors under the will, were merely the medium for carrying some of the provisions of this agreement into effect. Both under the will and under the contract, they were trustees as well as executors. If there were stipulations which they could not carry out as executors, we see none that they could not carry out as trustees. We sustain the decision of the trial court that the contract is a valid disposition of the rights of the parties to it. That is the question before us.

The extent to which the contract is an executed contract and the extent to which it is executory, are questions not important here. We

think no great difficulty will be found in giving effect to its provisions.

We do not deem it wise or proper to enter upon a construction of the will or the contract for future guidance of parties or courts in meeting questions that have not yet arisen. We had best determine only the issues now before us. The construction of neither the will nor the contract is for this court in this case, save as construction may be necessary to determine the validity of the contract.

Some inaccuracies of statement in the original opinion should be corrected. The opinion stated that "not the slightest relation of trust or confidence existed between plaintiff and the Rogers brothers. She disliked and distrusted them heartily." This language was used with reference to all the Rogers brothers as individuals. It was not intended to refer to the relation of the two who were executors by reason of the fact that they were such. As executors or trustees, however, their duties to plaintiff were not greater than were those of Benz and Hubachek, and the finding that those duties were fully performed we sustain.

The opinion stated that the will authorized the executors to hold and manage the estate for ten years, "with power of sale and power to earlier settle and divide the estate." The quoted clause is incorrect. The will empowered the executors to reduce the assets to cash earlier than the end of the ten-year period but not to make a division. In fact, while the administration in the probate court might under the law be closed and the estate assigned to trustees, the will did not so provide, and the trust created by the will contemplated that there be no division of the property until the end of ten years.

The contention is made that the last paragraph of the contract authorizes a division of the estate between the parties to the contract before the expiration of ten years, and that this vitiates the whole contract. The contract taken as a whole, clearly requires that the interests of these parties be held undivided until the expiration of the ten-year period.

The procedure by which the estate will be divided is matter to be first determined by the court of first instance. In this connection we desire to make further reference to one clause in the former opinion. It states that "a probate court can only distribute the property according to a will of a testator or according to the law of descent in case of intestacy. It cannot distribute property according to the contract of the

parties." This is in general true. Parties to an action or proceeding may, however, stipulate, within limitations, as to the decree which the court may enter in the action or proceeding. The question whether this contract is such a stipulation was not argued and is not decided. The question may arise in the future. We say what we have that there may be no doubt that the question is not foreclosed.

The contention is made that the order of the probate court, annulling an assent in writing by plaintiff to the will, is a prior adjudication of the invalidity of the contract. It is not. That order was simply an order relieving plaintiff from what in terms was an assent to receive what the will gave her notwithstanding the fact that those rights had been enlarged by the contract of the parties. The same order denied to plaintiff the right to renounce the will.