No. 32,067

In re The Estate of Alice C. Noble, Deceased (HULBERTINA A. MYERS, Executrix of the Estate of Alice C. Noble, Deceased, *Appellant*, v. MABEL A. NOBLE, Administratrix of the Estate of Floyd W. Noble, Deceased, *Appellee*).

(41 P. 2d 1021)

Opinion filed March 9, 1935.

*Warden L. Noe*, of Holton, for the appellant.

*Albert M. Cole*, of Holton, *A. Harry Crane, Ward D. Martin* and *Erle W. Francis*, of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from an order and judgment of the district court sustaining objections to the final account of an executrix. It involves a question of the effect to be given to an agreement entered into by the children of the testatrix and principal beneficiaries under the will for equal division of the estate; the effect of a specific bequest of bonds which were disposed of by testatrix before her death; and the jurisdiction of the district court on appeal from a ruling on a final account.

The testatrix, Alice C. Noble, died February 19, 1928. Two sons,

James S. Noble and Floyd W. Noble, and two daughters, Hulbertina A. Myers and Bessie V. Birkett, survived her as heirs at law.

The will and codicil of Mrs. Noble contained bequests of $1,000, each to Hulbertina and James; and bequests of $500 each to two grandsons, children of Bessie. The residue was given to the four children share and share alike. Item 3 of the will provided:

"I am now the owner of United States bonds in the sum of $1,000. Should I still be possessed of these bonds at the time of my decease I hereby direct that the same be divided and distributed as follows, to wit: One-fourth, or $250, to my son, James S. Noble; three-eighths, or $375, to my daughter, Hulbertina A. Myers, and three-eighths, or $375, to my grandsons, Edward Birkett and Noble Birkett, in equal shares . . . "

Prior to the opening and reading of the will the four children entered into an agreement for distribution of the estate. This agreement was subsequently put into writing and filed contemporaneously with the will. The agreement is as follows:

"It is hereby agreed on Feb. 22, 1928, by and between J. S. Noble, Floyd W. Noble, Hulbertina A. Myers and Bessie V. Birkett, the four legal heirs of Alice C. Noble, deceased, that they all share equally in the estate of the above deceased. It is also agreed by the above-named J. S. Noble, Floyd W. Noble, Hulbertina A. Myers and Bessie Birkett that Hulbertina A. Myers act as administratrix with the will annexed and shall serve without bond.

(Signed)     J. S. NOBLE,
F. W. NOBLE,
HULBERTINA A. MYERS,
BESSIE V. BIRKETT."

The order admitting the will to probate was filed March 20, 1928, and letters testamentary appointing Hulbertina executrix of the estate were granted and filed March 17, 1928. A partial distribution of $1,400 each to the four children was made August 2. The executrix filed an annual account on March 23, 1929, and no further accounting was made until the filing of the final account on March 24, 1931. The final account was made pursuant to citation issued upon application of one of the children, Floyd W. Noble, which application was filed February 26, 1931. The final account contained the following statement with respect to the special bequest contained in item 3:

"The said executor further represents that the U. S. bonds mentioned in this item of said will became due before the death of the said Alice C. Noble and were by her collected and the proceeds of the same invested in the Beatrice Building and Loan Association stock, mentioned in inventory, in the sum of $1,000, and of which she was the owner at the time of her death; that

on January 1, 1931, this executor collected the amount due on said building and loan stock, and the same has not been distributed to the legatees named in said item III of said will.

"This executor therefore prays the court for an order authorizing her to make distribution of the proceeds of said building and loan stock, to the legatees named in said will, or so much thereof as may remain after paying all debts and expenses of administration of said estate.",

Subsequently the executrix petitioned the court for final discharge, and on May 9, 1931, the probate court entered its order approving the final account of the executrix and discharging her from her trust.

Objections to the final account were entered by Floyd W. Noble. Specific objections were made to certain payments to the executrix herself and to James S. Noble and to the payment of $500 to each of the two grandsons. The objections recited the making of the family settlement and the partial distribution which had been made pursuant thereto; that thereafter no accounting was made until in March, 1931, and that: "Not until that time did this objecting heir learn that said executor had been paying out funds contrary to the agreements above set forth"; that both according to the terms of the above agreements and the provisions of the will the legacies to be paid out of the United States government bonds have failed, and the request of the executor to pay them out of other moneys should be denied. The objections concluded with a prayer that:

"The final account of Hulbertina A. Myers, executor, be not allowed and that the payments above objected to be required returned into court and distribution made as provided in the above agreements wherein this said Floyd W. Noble is to receive an undivided one-fourth of the estate after payment of expenses."

These objections were overruled, and Floyd W. Noble appealed to the district court. Subsequently he died and the action was revived in the name of Mabel A. Noble, the appellee herein. The district court, on December 2, 1932, entered judgment affirming the order of the probate court. Later, and on October 2, 1933, a new trial was granted and the hearing continued to the January term, 1934.

On April 5, 1934, judgment was entered sustaining the objection to the final account. The judgment reads:

"Now, therefore, it is considered, ordered and adjudged by the court that appellant's objections to the final account of Hulbertina A. Myers, executrix of the estate of Alice C. Noble, be and the same are hereby sustained and that the final account of said executrix is not approved; it is further ordered

by the court that the terms of the family settlement, to wit: one-fourth of the assets of said estate to each of the four children of Alice C. Noble, deceased, being James S. Noble, Floyd W. Noble, Hulbertina A. Myers and Bessie V. Birkett, is sustained, but it is ordered that the portion given to the two minors in the will of Alice C. Noble, to wit: Edward Birkett and Noble Birkett, in the amount of $500 each, shall go to them independently of their mother's share, which said final account shows has already been paid to them; it is further ordered that the specific bequest in said will of the United States government bonds fails and is of no effect; it is further ordered that Hulbertina A. Myers, executrix, make distribution according to the foregoing order, which entitles the appellant herein to one-fourth of all the net assets of said estate; that said executrix shall pay the payment to the appellant and file a corrected final account following the terms of this judgment, and upon filing receipts from all of the heirs provided herein and any other receipts needed to complete said final account that the said Hulbertina A. Myers, executrix, and her bondsmen shall be discharged (the same to be done within 40 days from this date), . . ."

What is the effect of the agreement? It has been definitely decided that beneficiaries under a will have a right to agree among themselves upon a distribution of the estate contrary to the disposition made under the will. (68 C. J. 909-915; 69 C. J. 1276, note 53; *Rogers v. Benz,* 136 Minn. 83; *Foote v. Foote,* 61 Mich. 181; *Fore v. McFadden,* [Tex. Civ. App.] 276 S. W. 327.) But such agreements will not be given effect to defeat a trust or specific restrictions placed upon the property in the will. (69 C. J. 1275, sec. 2674.) This court has passed upon questions somewhat analogous. In *Riffe v. Walton,* 105 Kan. 227, 182 Pac. 640, it was said:

"It is competent for the widow and the heirs of an intestate to enter into an agreement for the distribution of an estate upon a plan different from that prescribed by the statute of descents and distributions." (Syl. ¶ 2.)

In *Schnack v. City of Larned,* 106 Kan. 177, 186 Pac. 1012, a contest of a will was threatened and it was held that the city, a beneficiary, might "lawfully compromise its claim to the residuary estate."

Concerning sufficiency of consideration for such agreements, it has been said:

"That contracts between beneficiaries for a division of the property will be supported in equity without inquiry into the adequacy of the consideration on which they are founded. A valid consideration has been held to exist in the agreement of all beneficiaries binding their respective interests, a surrender of rights under the will, the relinquishment of other legal rights, or the avoidance of litigation and the effecting of a family compromise, and the consideration of love and affection, and the desire that family harmony should not be

destroyed by an unequal distribution provided by the will, has been held sufficient to support an agreement for an equal distribution in disregard of the terms of the will." (69 C. J. 1277.)

In *West v. West*, 135 Kan. 223, 9 P. 2d 981, it was said:

"The settlement made between the children agreed upon with the plaintiff was itself a consideration. . . ." (p. 229.)

In *Snuffer v. Westbrook*, 134 Kan. 793, 8 P. 2d 950, the court said:

"There was also the additional consideration of settlement of a family controversy which has always been recognized as a sufficient consideration for a contract or a financial obligation." (p. 795. See, also, *Babst v. Babst,* 130 Kan. 826, 288 Pac. 593.)

In *Bottom v. Harris*, 108 Kan. 7, 193 Pac. 1058, it was held:

"A note given in settlement of a controversy arising between brothers and sisters over the will of their father, all of whom are beneficiaries thereunder, but one of whom is threatening to contest the will, is upon sufficient consideration." (Syl. ¶ 2.)

In the instant case we are of the view there was sufficient consideration, notwithstanding the fact the agreement was made before the will was read. It is reasonable to assume that the children anticipated some inequality might result from the will, and to prevent strife and sustain the family harmony and good will, the agreement was made.

A more serious question, and the vital one in this lawsuit, involves the jurisdiction of the probate court—the district court on appeal—to enforce this agreement, arising as it does on objections to the final account of the executrix. In *Roberts v. Benz,* supra, the Minnesota court held the probate court cannot distribute property according to the contract of the parties. But in view of the situation here, and considering the fact the executrix was a party to the agreement; that the agreement, which was in effect an assignment of the interests of the beneficiaries, was filed in the probate court contemporaneously with the will, thus indicating a view on the part of the beneficiaries that probate of the will and administration were necessary, probably because all beneficiaries were not parties to the agreement, we hold that enforcement of the agreement involved a collateral issue and one logically arising from the court's exercise of jurisdiction and authority respecting settlement of the estate and clearly within its powers.

The modern tendency is to extend the jurisdiction of the probate court in respect to matters incidental and collateral to exercise of

its recognized powers. (*In re Osborn's Estate*, 99 Kan. 227, 229, 161 Pac. 601.)

"A probate court has full jurisdiction to adjudicate all questions arising in proceedings before it, and it has such incidental and ancillary jurisdiction as is necessary to an efficient exercise of the jurisdiction conferred on it." (15 C. J. 1012.)

In 1 Woerner on American Law of Administration, 3d ed., page 483, it is said:

"Where jurisdiction is conferred over any subject matter, and it becomes necessary in the adjudication thereof to decide collateral issues or incidental matters over which no jurisdiction has been conferred, the court must, of necessity, decide such collateral issues."

In *Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86, the plaintiff brought an action in the district court to cancel his assignment of his interest as sole heir of his deceased son. His assignee, the administratrix, declared her intention to convert the entire distributable estate to her own use, pursuant to the assignment. It was held the issue was one for adjudication by the probate court. The syllabus reads:

"Specific authority is conferred upon the probate courts to settle the accounts of administrators, and to order the distribution of the estates of deceased persons, and, having jurisdiction to make distribution of an estate, it follows as a necessary incident to the jurisdiction that it can determine who is entitled to the funds, and all questions necessary to a proper distribution of the estate.

"An heir of an intestate assigned his interest to the administratrix of the estate, who was proceeding with the settlement. While the proceedings were yet pending in the probate court, and after due notice had been given that final settlement and distribution would be made, the heir brought an action in the district court against the administratrix, charging maladministration, that the assignment was obtained by misrepresentation, and asking for an accounting and a recovery against the administratrix and her bondsmen. In due time, and upon legal notice, the proceedings in the probate court were continued to completion. Although the heir had full knowledge of the condition of the estate and of the wrongs alleged to have been committed by the administratrix, and had notice of the final settlement and distribution, he ignored the proceedings in the probate court, and without appearance or objection allowed final settlement to be made, the estate distributed, and the final decree entered, discharging the administratrix and releasing the sureties on the bond from further liability. No appeal was taken from the determination of the probate court, nor was any direct attack made upon the proceedings. *Held*, that the heir was concluded by the adjudication of the probate court."

See, also, *Keith v. Guthrie,* 59 Kan. 200, 52 Pac. 435, reviewing an order of the probate court for payment to the assignee of a beneficiary under a will.

There remains for consideration the bequest of the bonds, contained in item 3 of the will. Since the agreement is to be enforced, a construction of this item is necessary only as it bears on the bequests therein to the grandchildren. Unquestionably this bequest constitutes a specific legacy and was destroyed when the testatrix disposed of the bonds and bought the building and loan stock. The intention of the testatrix is clearly expressed in the words "should I still be possessed of these bonds." There is no alternative disposition in case the bonds were converted or entirely disposed of, but on the contrary the language clearly indicates that none was contemplated.

*Taylor v. Hull,* 121 Kan. 102, 245 Pac. 1026, involved a specific bequest of $9,000 in described war bonds. When the testator died he had only $6,000 in such bonds. The legacy was held good as to the $6,000 war bonds, but ineffectual to pass other property. And the fact the bonds had matured or been called was said to be immaterial.

In 73 A. L. R. 1256, note 2 reads:

"The expression of the ownership of property by such words as 'my,' 'in my possession,' 'owned by me,' 'standing in my name,' 'which I now hold,' is a well-defined indication that a bequest of that property is a specific legacy."

See, also, *Walton v. Walton,* 7 Johns Ch. (N. Y.) 258, 11 Am. Dec. 456; *Dryden v. Owings,* 49 Md. 356; *Stilphen, Appellant,* 100 Me. 146.

It follows that the balance of the estate remaining after payment of the bequests of $500 each to the two grandchildren should be distributed to the contracting parties share and share alike, pursuant to their contract.

The judgment of the district court is affirmed.