ZELLAH CARDWELL YEGEN AND PETER YEGEN, JR., PLAINTIFFS AND RESPONDENTS, v. EDNA FRANCES CARDWELL AND BENJAMIN E. CARDWELL, DEFENDANTS AND APPELLANTS. EDNA FRANCES CARDWELL AND BENJAMIN E. CARDWELL, CROSS-COMPLAINANTS AND APPELLANTS, v. ZELLAH CARDWELL YEGEN AND PETER YEGEN, JR., CROSS-DEFENDANTS AND RESPONDENTS.

No. 9626.

Submitted December 5, 1957. Decided February 21, 1958.

321 Pac. (2d) 1077.

Sterling M. Wood, Billings, for appellant.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, for respondent. R. G. Wiggenhorn, Billings, argued orally.

THE HONORABLE DEAN KING, District Judge, sitting in place of MR. JUSTICE BOTTOMLY.

This action was brought by plaintiff's to quiet title to an easement and right-of-way for an irrigating ditch. The claimed easement and right-of-way covers a strip of land twelve feet wide, north and south, and bounded on the north by a line parallel to and thirty feet south of the north line of Lot 3, (being the NE¼ NW¼) of Section 3, Township 1 South, Range 25 East, in Yellowstone County, Montana. Plaintiffs also claimed damages for injury to, and obstruction of the ditch along said right-of-way. The ditch is used to convey water to plaintiffs' lands for irrigation purposes. The water is delivered to plaintiffs at the west end of the ditch by the Big Ditch Company.

Plaintiffs are wife and husband. Defendants are likewise wife and husband. Zellah Cardwell Yegen and Edna Frances Cardwell are daughters of Ed Cardwell and Sarah Cardwell. Edna's husband, Benjamin Cardwell, is a distant cousin of the two sisters. The husbands have acquired an interest in some of the property of their wives by means of conveyances from their respective wives so that they are proper parties to the action.

Peter Yegen acquired his interest in 1940; Benjamin Cardwell his interest in 1944.

Findings, conclusions, and judgment were for plaintiffs and against the defendants, quieting title in plaintiffs to the easement and right-of-way claimed, and awarding them damages for obstruction and damage to the ditch over said right-of-way in the sum of $600. Specifications of error raise the sole question of whether or not the evidence supports the findings and judgment. Defendants' counsel did not argue the case in this court, but by his brief he urges that the evidence fails to show any ownership of such an easement by plaintiffs, and that the evidence shows that defendants are the owners of said Lot 3 in fee simple, and subject to no easement or right-of-way in plaintiffs of any sort.

From sometime prior to 1910 Ed Cardwell was the owner of the North Half of Section 3, the North Half and the Southeast Quarter of Section 2, and the West Half of the Northwest Quarter of Section 1, all in Township 1 South, of Range 25 East, in Yellowstone County, Montana. He irrigated it with water furnished by the Big Ditch Company, a sort of cooperative company which furnished a large volume of water to its share holders in proportion to the number of shares in the company owned by each member. Ed Cardwell's water was delivered to him by the Big Ditch Company at the west end of said disputed ditch, and was conveyed by him, through it, to all of his lands.

Plaintiffs contend that Zellah acquired an easement to use said ditch and right-of-way for the conveyance to her lands of the water represented by 129 shares of Big Ditch Company stock. They contend that she acquired such easement by two separate transactions. We will consider those transactions in chronological order.

In 1917 Ed Cardwell and Sarah Cardwell executed two warranty deeds conveying to Edna the Northwest Quarter of Section 3, "subject to the right-of-way for all ditches now on said lands and used for the purpose of conveying water to other

and adjoining lands for the irrigation thereof." They also executed two warranty deeds conveying to Zellah the Northeast Quarter of Section 3, "together with * * * the appurtenances thereunto belonging or in any wise appertaining." One of these deeds to Zellah covered only forty acres of the Northeast Quarter. The other covered the other three forty-acre tracts therein, and included also thirty-five shares of stock in the Big Ditch Company. The deeds were executed on the same day before the same notary, and since there is no evidence as to which deeds were executed first, we will consider them as executed at the same time. Edna's deeds were delivered about 1926. Ed Cardwell died late in the fall of 1933, leaving all his property to his wife, Sarah. In 1934, Sarah delivered Zellah's deeds to her.

Counsel for the defendants contend that the deeds to Zellah were invalid because not delivered to Zellah until after the death of Ed Cardwell, one of the grantors. Sarah, who would have otherwise owned the property covered by the deeds, delivered them to Zellah. Based on that fact we think the district court might well have found that Ed Cardwell placed them beyond his power to recall by delivering them to Sarah for delivery after his death, and that the deeds conveyed good title from Ed Cardwell. However, if Ed Cardwell had not signed the deeds he would have continued to own the land and the appurtenant ditch right subject to which Edna's deeds were given, and which he continued to use until his death. The land and ditch right would have become the property of Sarah with the rest of his estate. After his death she, herself, delivered the warranty deeds executed by her, as well as by Ed, to Zellah. The Northeast Quarter of Section 3, together with the appurtenant right to convey the water, represented by thirty-five shares of stock, over the strip in question became the property of Zellah, and is still owned by plaintiffs.

By the other transaction plaintiffs contend that Zellah acquired the right to convey the water represented by ninety-four shares of Big Ditch Company stock through the same ditch

for use upon the North Half of Section 2, and the West Half of the Northwest Quarter of Section 1, by reason of the following undisputed facts:

At the time of her death in March of 1939, Sarah Caldwell owned that stock and land. By her will she directed her executor to sell the same, and considerable other property, and divide the proceeds equally between Zellah and Edna as residuary legatees. Zellah and Edna preferred to divide the property between them rather than have it sold. By written agreements they provided for the division, and requested the executor and the court to distribute it to them as agreed on. The executor and the court complied, and in accordance with those agreements signed by both the North Half of Section 2, the West Half of the Northwest Quarter of Section 1, and ninety-four shares of stock in the Big Ditch Company were distributed by the court to Zellah. The directions of the testatrix were set aside by the beneficiaries. See In re Noble's Estate, 141 Kan. 432, 41 Pac. (2d) 1021, 97 A.L.R. 468. The parties to this action relied on it as a valid proceeding. They construed the will as leaving the property itself to them as tenants in common. Then they divided it, each taking a share. Each conveyed her undivided half interest in a portion of the property to the other. The district court made distribution accordingly. We shall consider that they received the property as tenants in common and so divided it.

The 1917 deeds to Edna above referred to conveyed the Northwest Quarter of Section 3, ''subject to the right-of-way for all ditches now on said lands and used for the purpose of conveying water to other and adjoining lands for the irrigation thereof.''

The lands that Zellah acquired in the settlement of her mother's estate adjoined the Northeast Quarter of Section 3 on the east. The disputed ditch and right-of-way has at all times since prior to 1910 been used for the purpose of conveying water to those lands for the irrigation thereof. Those deeds conveyed the Northwest Quarter of Section 3 to Edna, reserv-

ing an easement appurtenant not only to the Northeast Quarter of Section 3 but to all of Ed Cardwell's lands in Section 1 and 2, including the lands later acquired by Zellah in the settlement of her mother's estate. On Ed Cardwell's death in 1933, Sarah Cardwell succeeded to those lands and the appurtenant easement. On her death in 1939, by her will, and by agreements with Edna, Zellah succeeded to those lands and ninety-four shares of Big Ditch stock. The easement went with the lands as appurtenant thereto, and Zellah became the owner of the easement for the purpose of conveying to those lands the water represented by the additional ninety-four shares. R.C.M. 1947, sections 67-211, 67-607, 67-1607, 67-1523, and 49-114.

Defendants contend that by quit-claim deed executed by Sarah in 1938, Sarah released and conveyed to Edna the easement for the right-of-way and ditch so that upon her death she no longer owned the easement, and Zellah could not acquire it as a part of her mother's estate.

Let us take a look at the deeds. The 1917 deeds to Edna were just alike except that one covers the East Half and the other the West Half of the Northwest Quarter of Section 3. Except for this difference the deeds read that Ed and Sarah convey to Edna real estate in Yellowstone County, described as follows:

"All of the East one-half (E½) of the Northwest (NW¼) Quarter of Section Three (3) in Township One (1) South of Range Twenty-five (25) East of Montana Principal Meridian, containing Eighty (80) Acres, according to the United States Government survey thereof, subject to the right-of-way for all ditches now on said lands and used for the purpose of conveying water to other and adjoining lands for the irrigation thereof.

" (This grant is given subject however to the following reservations: That the said Grantee, her heirs, Executors, administrators or assigns, shall not sell, assign, set over, transfer, mortgage or encumber the above described property or any part thereof, for a period of Twenty (20) Years from the date hereof.)

"Reserving and excepting unto the first parties one-half of any and all minerals including oil and gas contained in the said lands, together with the right to explore for, remove and extract the same."

The deed of February 1, 1938, upon which defendants rely reads that Mrs. Sarah Cardwell does convey, remise, release and forever quitclaim to Edna Frances Cardwell real estate in Yellowstone County described as follows:

"All minerals, mineral rights, surface rights, and all other rights and privileges, heretofore reserved and excepted by the said first party and Edward Cardwell in the following described lands situated in the said County of Yellowstone, to-wit:

"The northwest quarter (NW¼) of section three (3), township one (1) south, range twenty-five (25) east, M.P.M. It being the intention of the first party herein to convey to the said second party all reservations and exceptions specifically mentioned in those two certain deeds dated November 28, 1917, wherein the first party herein and the said Edward Cardwell were grantors and the second party herein was the grantee."

The district court apparently did not construe the 1938 deed to Edna as releasing her mother's right and easement to convey water through the ditch in question to her lands which had to have water conveyed through that ditch to be profitable. Evidence as to the conduct of the parties up to the time this action was commenced indicates that they did not so construe it. We agree that the 1938 deed did not release the easement. The district court was correct in holding that plaintiffs have an easement to convey the water represented by 129 shares of stock through the ditch in question.

The district court also held that, in order to convey the water represented by 129 shares of stock, it was necessary that they have the easement over the strip in question twelve feet wide. It also held that plaintiffs had been damaged by defendants' obstruction of the ditch in the sum of $600. The evidence as to the necessary width of the strip, and the damages, was conflicting and for the district court to determine. Defendants'

counsel in his brief has not suggested any error as to those points.

We find no error. The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN and ADAIR, concur.